## LEVI *v.* KARRICK *et al.*

Where in proceedings for the dissolution of a partnership, and for an account of the partnership transactions, the cause is referred, by agreement of the parties, to referees, the referees are bound by the agreement of partnership, in stating an account between the partners, and they can exercise no discretion in charging the expenses of the partnership.

Where a bill for a dissolution of a partnership charges one or more of the partners with usurpation of the management and control of the business, and with concealment from the complainant of all knowledge of the partnership transactions; and where the bill prays for the appointment of a receiver, &c., and the cause is subsequently referred to referees, it is the duty of the referees to inquire into, and report upon, all the matters in issue between the parties, for the information of the court.

Before a final decree can be rendered, dissolving a partnership, it is necessary that the assets should be converted into money, and each partner's balance ascertained and allotted to him.

Where in a proceeding for the dissolution of a partnership, the court found that there was due the complainant a certain sum, over and above the amount of his expenses in the business, and the court rendered judgment for that sum in his favor against "the said partnership;" *Held,* That the judgment was erroneous.

Levi v. Karrick et al.

*Appeal from the Dubuque District Court.*

FRIDAY, APRIL 8.

THIS BILL was filed by the complainant, Levi, to have a dissolution of the partnership, and a settlement of the partnership accounts, &c. The parties were carrying on the business of mining for lead-ore on lots 264 and 265, in Dubuque county. Their respective mining interests in said lots were as follows: In lot 264, called the "Starr" lot, Levi owned eight-eighteenths, Karrick five-eighteenths, and Jones five-eighteenths of the mining interest. In lot 265, called the "Levi" lot, Levi owned one-sixth, Karrick one-third, and Jones one-half of the mining interest. It is averred in the complainant's bill, and not denied in the answer, that by the agreement and understanding of the parties, "each partner was to pay his equal proportion, according to his mining interest in said lots, of all expenses necessary to carry on said business of mining thereon."

Answers were filed by Karrick and Jones, and upon the issues joined by the parties at the February term of the district court, 1858, it was ordered by the court, by the agreement of parties, that the cause, and all the questions and issues thereto pertaining, be referred to referees, appointed by the court, to report their decision and award on the first day of the next term of the court. On the coming in of the report of the referees, the complainant filed exceptions thereto. A portion of the exceptions taken were overruled by the court, and a decree rendered, from which the complainant appeals. The other facts material to an understanding of the points decided, are stated in the opinion of the court.

*B. Covel,* for the appellant.

*Samuels, Allison & Crane,* for the appellees.

STOCKTON, J.—The exceptions taken to the report of the referees, are numerous, and we shall notice such of them only as may be deemed important.

The referees were bound by the agreement of partnership, in stating an account between the parties, to charge to each partner his proportion of the expenses in raising mineral on each lot, according to his interest in said lot.

They have departed from this rule, in those instances in which, instead of ascertaining the actual expenses incurred upon each lot for a given period, they have apportioned the expenses between them in proportion to the amount of mineral raised on each lot.   Thus, they report, that during the month of August, 1857, the expenses incurred in digging on both lots for mineral, was $547 24; and which sum they report should be charged to the respective lots, in proportion to the quantity of mineral raised from each lot. We do not know that the rule adopted by the referees, affords any correct criterion for ascertaining the amount of expenses to be charged to the separate lots, and in the absence of any agreement that such should be the rule, we think it was the duty of the referees to ascertain the true amount of expenses to be charged to each lot.

The complainant further excepted to the report, for the reason that a charge of $1,802,16, for expenses incurred for machinery, during the month of August, 1857, is charged exclusively to the "Starr" lot.   It is claimed that the item of expenditure was incurred for both lots, and should have been charged to both, and not to one exclusively.   It is further objected, that the expenses incurred from November, 1855, to September, 1856, during which time no mineral was raised; and from October, 1856, to July, 1857, during which time mineral was raised, said expenses amounted in the aggregate, to the sum of $10,113 99, are, by the report of the referees, charged to the "Starr" lot exclusively.

The bill charges that expenses properly chargeable to the

"Levi" lot, have been wrongfully, by the other partners, charged to the "Starr" lot. This charge is not denied by the other partners; and it is admitted by the answer of Karrick, that the labor and machinery had been used for the benefit of both lots, although the machinery was purchased principally for the "Starr" lot.

As the complainant paid four-ninths, of the expense of working the "Starr" lot, and only one-sixth of the expense of working the "Levi" lot, it is evident that there was injustice to him, in charging all the expense, during this period, to the "Starr" lot exclusively. The referees should have apportioned the expense of the machinery and labor to each lot, according to the benefit or advantages accruing to each lot by the expenditure. They could exercise no discretion in charging these expenses to one lot, exclusively. They must be governed by the rights of the respective parties, as shown by the pleadings, and as regulated by law.

The expenses incurred during the month of August, 1857, are found to amount to the sum of $547 24. A mistake is admitted to have been made by the referees, in apportioning this expense .to the two lots. This mistake, though admitted to exist, is not corrected by the district court, in entering up the decree. A more serious objection to the report of the referees, and to the decree of the district court rendered thereupon, is, that there is no final adjudication of the rights of the several partners, and no settlement of the accounts and business of the partnership.

The bill charges a usurpation by Karrick, of the management and control of the business of the partnership, and a concealment from the complainant of all knowledge of its transactions; it charges him also, with gross mismanagement of the business, and a useless and wasteful expenditure of money. For these reasons, a dissolution of the partnership is prayed by complainant, and the appointment of a receiver, and an account, and final ter-

mination of the business.   So far as these matters are to
be considered as at issue between the parties, they were
to be inquired into by the referees, and a report there-
upon should have been made, for the information of the
district court.

A partnership will not be dissolved for trifling faults
and misbehavior of one of the partners, which do not go
to the substance of the contract; yet a dissolution should
be granted, where there is an impracticability in carrying
on the undertaking, either at all, or according to the
stipulations of the articles.   1 Story's Eq., sec. 673.   So
it may be granted on account of gross misconduct of one
or more of the partners.

It does not appear, in this instance, that the partner-
ship was to continue for any specified time; and putting
out of the question the averments of the bill as to the
misconduct of the partners, and the mismanagement of
the business, it appears to us that the complainant was
entitled to a decree for a dissolution of the partnership,
and for the appointment of a receiver to collect the debts
and make sale of the property, and to close the business,
so that a final settlement might be made of the same,
and a final distribution made of its effects.   It was ne-
cessary, before any final decree could be made, that the
assets should be converted into money, and each part-
ner's balance ascertained, and allotted to him.   Instead of
this, the district court, by its decree, ascertains that there
is due to the complainant, the sum of $2,614 46, over and
above the amount of his expenses in the business of the
firm, and renders a judgment in his favor, against "the
said partnership," for the amount so ascertained to be due
him; and so as to the other partners.

The decree of the district court will be reversed, and the
cause remanded, with directions for the court to render a
decree for the dissolution of the partnership, and the ap-
pointment of a receiver to close up the business, by collect-
ing the debts and making sale of the assets, preparatory to

a final settlement. If it is shown to the court, that a sudden stoppage of the working of the mines, would work material injury to the interests of the partners, the court may direct a continuance of the same by the receiver, until such time as the work may be advantageously stopped, or until the partners may make some arrangement for the sale and disposition of their interests, which will allow a continuation of said work.

The court may, in its discretion, refer the accounts between the partners to a master, to state the same and report to the court, or may recommit the report of the referees to the same, or other persons, to settle the account in accordance with the views expressed in this opinion.

Decree reversed.