HOLT v. PETERS.—66 S. W. (2d) 1017.

Eastern Section.   July 29, 1933.

Petition for Certiorari denied by Supreme Court, October 19, 1933.

Cates, Smith & Long, of Knoxville, for appellant.
Fowler & Fowler, of Knoxville, for appellee.

SENTER, J.   This suit grew out of a partnership between complainant, Holt, and defendant Peters, engaged in road and other construction work.   Both parties had previously been engaged in the general contracting and construction business.   Complainant was a civil engineer by training.   The partnership began in the summer of 1920, and articles of copartnership were entered into between the parties.   The articles of copartnership began with a contract at Hazard, Kentucky, for certain street paving.   Holt, who was a civil engineer, made up the figures upon which R. L. Peters submitted a bid, and which bid was accepted by the city of Hazard.   Whereupon Holt and Peters entered into a partnership agreement for that particular job.   It appears that the Hazard contract was concluded in the summer of 1923; but before it had been completed the same parties as partners took another contract in the State of Tennessee for road construction work located in Knox county, and referred to as the ''Bearden Job.''   Mr. Holt made all the calculations for the Knox county job, as he did on all contract work taken by the partnership.   The bid on that job and on other jobs was taken in the name of R. L. Peters.   The bill alleges that, after the Hazard job was completed,

and before, when other contracts were taken by the parties, that the same partnership agreement continued in force with reference to the other jobs. The bill alleges that the partnership terminated with the completion of what is referred to as the "Phoenix Utility Contract," which project was completed in September, 1927, and that upon the completion of said contract Holt gave notice to Peters that he did not care to continue the partnership longer, and by mutual consent the partnership relation was terminated about January 1, 1928. The bill further alleges that thereupon Holt made efforts to ascertain the status of the partnership affairs from the books and records which had at all times been in the custody and under the control of Peters, and that he called upon Peters for a full and complete statement or accounting as to the partnership matters, and how each member thereof stood. He discovered that certain entries had been placed upon the books by the direction of Peters without Holt's knowledge or consent, and with respect to which he did not agree, but sought to have adjustment, but was unable to procure an adjustment of the partnership matters from Peters, and whereupon, on the 15th day of May, 1928, he wrote a letter to Peters, insisting that the partnership had been terminated and advising Peters not to charge any other items of salaries, rents, etc., to the partnership account. The bill charges that defendant, Peters, sought to take credit on the books for salaries in excess of the amount provided in the contract entered into between the parties; that, under the contract, complainant, Holt, was to receive a salary of $350 per month, he devoting his entire time and attention to the business, and that defendant, Peters, was to receive a salary of $200 per month; that these were the amounts specified in the original written contract, and that the operations continued between the parties after the completion of the Hazard, Kentucky, contract on the same basis; and that, in violation of said salary agreement, said defendant had credited his account with salary at the rate of $350 per month, or had sought to do so after complainant had given notice of the termination of the contract about January 1, 1928, and after the completion of the Phoenix Utility contract, and also made other entries on the books, or had same made undertaking to make improper charges to the account of complainant and taking improper credits to defendant's account.

The bill further charges that, after the completion of the Phoenix Utility contract in September, 1927, when complainant concluded to retire from the contracting business and advised the defendant of that fact, he sought to arrange with the defendant for the sale of the road machinery and equipment owned by the partnership; that defendant proposed to make a give or take proposition, knowing that complainant was retiring from the contracting business and would have no use for the machinery and equipment, and knowing, therefore, that complainant would be placed at a disadvantage on a give

or take proposition, since defendant contemplated remaining in the . contracting business and could use the machinery and equipment to good advantage; that defendant refused to consider any suggestion of a sale of the equipment and machinery except on a give or take proposition between the parties. The bill further charged that he had been unable to have defendant render a full and complete statement and accounting of the condition of the business, and the amount that was due and owing to complainant out of the partnership business. The bill also charged that defendant, after January 1, 1928, had continued to collect in notes and judgments and other indebtedness owing to the partnership after January 1, 1928, and had not made any accounting to complainant for such items.

The bill charged that he was entitled to an accounting in this proceeding, and to have the defendant, Peters, in his answer to set forth fully and in detail all notes, accounts, judgments, and other evidences of indebtedness, collected by him since January 1, 1928; the disposition of any and all property or partnership assets by him made; and any funds paid out since January 1, 1928, and for what particular account. The bill charged that complainant was entitled to an injunction restraining defendant from collecting, or attempting to collect, any of the accounts, notes, or judgments owing to said partnership, and from disposing of, or attempting to dispose of, any of the equipment, assets, or property belonging to said partnership; that a receiver should be appointed to take into custody and control all partnership property, and all books and records pertaining to said copartnership.

The bill prays for the accounting as set forth in the bill, and also for the issuance of an injunction enjoining and restraining the defendant as set forth in the bill, and also for the appointment of a receiver.

The injunction was issued as prayed for in the bill.

The defendant, Peters, by . his answer, admits that he had been engaged for several years in the construction business, and admits that complainant was a civil engineer, with a limited experience in contracting until he became associated with the defendant. He admits the contract entered into with the city of Hazard, Kentucky, to construct certain streets, and that a partnership was entered into between complainant and defendant to perform said contract. He avers that said contract was reduced to writing and signed by both parties in June, 1920, but further avers that some time thereafter another writing executed by complainant and defendant was substituted for the contract originally drawn, which is the contract between the parties for the Hazard, Kentucky, job. The answer refers to certain provisions in the contract, whereby complainant was to supervise the construction work, and avers that the supervision of the work was of such a negligent and improper character that it resulted in a

loss of $2,500 to $3,000 on one street, and that the partnership had been put to considerable additional trouble and expense in its efforts to collect moneys due because of complainant's failure to properly perform his duty in looking after and supervising said work, and for which complainant should be charged. The answer admitted that they each became the owner of a one-half interest in the equipment used in the prosecution of the work. The answer avers that defendant, Peters, assigned to the partnership, for the purpose of carrying on said work, equipment in value from $5,000 to $6,000, and took credit for same, while complainant assigned thereto equipment worth from $300 to $400, and took credit for the same; that the remainder of the equipment was purchased with partnership funds. The answer admits that the parties, as partners, took other construction contracts mentioned in the original bill. The answer denies that complainant and defendant agreed that the written contract under which the work was performed in Hazard, Kentucky, should apply to the carrying out of other contracts mentioned. The answer denies that there had been an understanding between the parties as to the terms under which said different contracts should be performed, or as to the amount of compensation to be received by each. The answer avers that complainant prepared a written contract containing practically the same terms as the contract for the Hazard job, but that defendant refused to sign same, and, while he admits that by implication only he and complainant each had a one-half interest in the profits arising out of the contracts if there were profits, yet in other respects he insists that the compensation to which each was entitled was to be determined by the amount of work, time, and attention given to business by the respective parties, and the responsibility assumed in financing said enterprises, etc. He avers in the answer that he had been compelled to look after many suits involving various amounts, which in the aggregate was more than $100,000; that it was not contemplated when complainant and defendant first became associated as partners that any such work or responsibility would devolve upon the defendant. He admits that both complainant and defendant would from time to time draw sums from the partnership which were charged against them, respectively. He denied in his answer that at various times complainant had approached him with respect to a disposition of the partnership equipment, and averred that defendant had made repeated efforts to get complainant to actively participate in the disposition of the equipment, but was unable to get him to take any interest therein. The answer refers to certain trucks, and alleges that, because of the neglect of complainant, one truck of the value of $2,500 was lost or became destroyed because of unskillful handling, and that complainant was responsible for the loss of said truck; that another of the trucks was left in North Carolina, exposed to the weather without shelter, and worth but very little. He denies

that he had sought to acquire said property at an unfair price or a price below its actual value, and avers that he is not longer in the contracting and construction business, and does not have any use for the equipment. He denies that it is necessary or proper or advisable that a receiver be appointed. He avers in the answer that complainant had been neglectful of his duties as a partner, which had resulted in considerable litigation with abutting property owners on street improvement work, and makes other specific averments and charges with reference to the alleged negligence and inattention of complainant to the business of the partnership. The answer denies that since January, 1928, any considerable sums had been collected on the account of the partnership, but states that nearly all of the claims that were collectible had been settled or otherwise collected. The answer charges that complainant's account shows numerous debit charges and items drawn by complainant on the partnership, and for which interest should be charged, and makes other charges in the answer, and denies that defendant is indebted to complainant in any amount under a proper accounting. He files an exhibit to his answer purporting to be a full statement and accounting of the partnership matters. Many other matters are set forth in the answer and which were commented upon by the chancellor in his finding of the facts as set forth in the decree.

A large amount of proof was taken by depositions by the respective parties to the suit, and many exhibits filed, which went to make a voluminous record. There was an order of reference directed to the master, but subsequently the chancellor withdrew the order of reference, having concluded that the questions presented could be disposed of by the chancellor without a reference to the master.

Pending the suit, R. L. Peters died, and the cause was properly revived against his administrator. There is a decree in the record which recites in substance that on a former day of the court the cause came on to be heard before the chancellor upon the pleadings and exhibits thereto, the proof on file, briefs of counsel, and the entire record in the cause, and that an oral opinion was rendered by the court on October 28, 1932, but, before a formal decree was entered on said opinion, the defendant filed a petition to rehear, to which the complainant replied. The decree proceeds to set forth the material and determinative facts.

We have carefully investigated the record, including all the evidence and the exhibits, and, after a careful investigation of the entire record, we fully concur in all the findings by the chancellor. We therefore deem it unnecessary to go into a discussion of the facts, but here adopt the findings of the facts as set forth in the decree of the chancellor, and which are as follows:

"This cause came on to be heard before the Honorable Robert M. Jones, chancellor, upon the pleadings and exhibits thereto, the proof

on file, briefs of counsel, and the entire record in the cause, at a former day, and oral opinion rendered therein on October 28, 1932, but, before a formal decree was entered on said opinion, the defendant filed a petition to rehear, to which the complainant replied, upon consideration of all of which the court doth accordingly find, adjudge and decree:

"I.

"That said petition to rehear presents no question not thoroughly considered by the court upon the original hearing, and is accordingly overruled.

"II.

"That the contractual relationship evidenced by the written contract entered into between complainant and the said R. L. Peters respecting the street paving. job at Hazard, Kentucky, and exhibited to the testimony of the complainant, Holt, was continued in force and effect throughout the period of all partnership jobs or construction contracts; that under said partnership contract or arrangement the said H. F. Holt was to receive a salary of $350 per month and the said R. L. Peters a salary of $200 per month; and that the net profits of said partnership were to be equally divided between the two partners.

"III.

"That the said R. L. Peters erroneously, and in violation of said contractual arrangement, took credit upon the books of said partnership for additional salary of $150 per month, beginning with November 13, 1926, and concluding March 31, 1928.

"IV.

"That the said R. L. Peters erroneously and without the consent or authority of said H. F. Holt caused his individual account on said partnership books to be credited with certain interest items hereinafter more particularly set forth on what is termed in the record 'alleged credit balances' to his account.

"V.

"That the said R. L. Peters caused to be erroneously entered upon the books of said partnership without the consent of complainant, H. F. Holt, certain charges representing interest on the alleged debit balances of complainant Holt's personal account.

"VI.

"That as of May 18, 1928, the said R. L. Peters attempted to strike a balance on said books and to pay to the respective parties the net profits then on hand after giving effect to the erroneous salary and interest credits and debts aforesaid. which the court finds and holds was not a correct statement of said partnership accounts.

"VII.

"The court accordingly finds, under the proof, that in a proper

settlement of said partnership affairs the account of the said R. L. Peters should be charged with the following items, to-wit:

| | | |
|---|---|---:|
| "(a) | Salary wrongfully credited to R. L. Peters' account | $2,475.00 |
| "(b) | Interest wrongfully credited to R. L. Peters' account | 3,167.01 |
| "(c) | Interest wrongfully charged to H. F. Holt's account | 915.18 |
| "(d) | Pay roll and cash-out items of May 16th, 1924, used personally by R. L. Peters but not charged to his account | 1,080.53 |
| "(e) | Pay roll withdrawn by R. L. Peters for R. L. Peters & Co., of Aug. 4th, 1923, but not charged to R. L. Peters' account | 1,688.82 |
| "(f) | Excess credit on Packard truck of Aug. 25th, 1924 | 400.00 |
| "(g) | Collections made by R. L. Peters since May 18th, 1928, the date of the foregoing settlement, less expense allowed | 4,299.40 |

"Total ...................................... $14,025.94

"On the foregoing interest will be allowed from the date of the filing of the bill in this cause, to-wit, March 11, 1929, in the sum of $2,968.81, representing a total indebtedness to said partnership by the said R. L. Peters of $16,994.75, of which the complainant, H. F. Holt, is the owner of a one-half interest, or $8,497.37, it appearing that said R. L. Peters personally received all of the aforesaid sums.

"VIII.

"The contention of complainant, H. F. Holt, that the said R. L. Peters' account should not be credited with items aggregating $1,-778.05 representing alleged expense incident to collections made by the said R. L. Peters, including salary to him of $100 per month, from May 18, 1928, down to the filing of the bill in this cause, is not well taken, and out of the sum collected, as shown by Exhibit 3 to the answer of R. L. Peters, of $6,513.12, the expense items noted thereon, aggregating $2,213.92, will be allowed, leaving a balance chargeable to the account of said R. L. Peters as shown in the tabulated statement above of $4,299.40.

"IX.

"Neither of the contentions of the said R. L. Peters respecting various and sundry items alleged as chargeable to the account of H. F. Holt is sustained by the proof, and each and every one of said items contended for as proper charges against the personal account of H. F. Holt is disallowed.

"X.

"It is accordingly ordered, adjudged, and decreed that the complainant, H. F. Holt, have and recover of the estate of R. L. Peters, deceased, and of George Peters, as administrator thereof, against whom

this cause has been revived, in the sum of $8,497.39, representing one-half of the amount heretofore decreed to be owing to said partnership by the said R. L. Peters under a proper statement of account in this cause, together with two-thirds of the cost of this cause, for which execution may issue. The remaining one-third of said cost will be paid by the said H. F. Holt.

"XI.

"The receiver is authorized to apply any funds coming to his hands as such, or as clerk and master of this court, in satisfaction of this decree and for equalizing the share of the complainant with the defendant in accordance herewith and no moneys will be paid by the receiver or the clerk and master to the estate of the said R. L. Peters until said shares are equalized in accordance with the directions before given.

"All other matters are reserved.

"Enter:                                        Jones, Chancellor."

The several assignments of error are respectively directed to the finding of the facts with reference to the several matters as above set forth in the decree of the chancellor.

We are of the opinion that on each of the several questions and each of the facts as found and determined by the chancellor such finding by the chancellor is supported by a preponderance of the evidence. All these assignments, except the eighth, present questions of fact. The brief filed by appellant in support of the contention made by the several assignments of error discusses the evidence in considerable detail, and the reply brief by appellee also presents a discussion of the evidence, but it would serve no good purpose for an extended analysis of all the evidence contained in the record. It would but unnecessarily prolong this opinion.

By the fourth assignment, the action of the chancellor in charging the defendant, Peters, with interest on the balance found to be due by him to Holt from March 11, 1929, the date upon which the original bill was filed, is challenged. Under this assignment, it is the contention of appellant that, if the chancellor was correct in holding that no interest should be computed prior to said date in favor of or against either of the parties on moneys advanced or withdrawn, he should have held that no interest was computable prior to the settlement of the account, which was the date of the decree, and not the filing of the original bill. By this contention, appellant overlooks that it was due to his failure to render a proper accounting to complainant that necessitated the filing of the bill and to have the accounting. The decree of the chancellor fixes the rights of the respective parties at the time the original bill was filed, and on that date the amount decreed by the chancellor was found to be due and owing by the defendant to the complainant. This was the effect of the decree of the chancellor. In that situation, we are of

the opinion that the chancellor very properly allowed interest on the amount found to be due and owing by defendant to complainant on the date the bill was filed.

This is not the case of a mere winding up of a partnership, and where interest is only allowable from the date that the account is actually made up by the chancellor. The winding up of the partnership is but one of the matters to be determined by the court, and the taking and stating of the account of the partnership is necessary in winding up the partnership affairs. However, this accounting did not confine itself to a mere striking of a balance between the parties, but was a judicial determination in favor of complainant of the several controverted items which had been wrongfully charged on the books of the partnership by the defendant, and the amount decreed by the chancellor was the amount that was due and owing to the complainant at the time the bill was filed.

By the eighth assignment it is said that the chancellor erred in pronouncing judgment against the defendant for any amount, because the assets of the partnership have not yet been collected and distributed between the partners, and it has not yet been determined how the partners will stand as between each other when there shall be a full distribution of the assets. In support of this contention appellant cites several cases from other jurisdictions: Nakamura v. Kondo, 65 Cal. App., 211, 223 Pac., 425; Shuken v. Cohen, 179 Cal., 279, 176 Pac., 447; Levi v. Karrick, 8 Iowa, 150; Bagg v. Osborn, 169 Minn., 126, 210 N. W., 862; Green v. Stacy, 90 Wis., 46, 62 N. W., 627; Durkheimer v. Heilner, 24 Or., 270, 33 Pac., 401, 34 Pac., 475. These cases simply hold that a personal judgment, as a general rule, will not be rendered against one of the partners until the partnership property has been converted into cash. We do not think that the cases referred to have any application in a case such as we now have under consideration. When the record in this cause was fully made up, the chancellor was then in a position to decide all the controverted issues involved in the litigation, and proceeded to do so by his decree. Under the facts as found by the chancellor, complainant was entitled to a personal judgment against the defendant for the amount adjudged in the decree. Rendering a judgment for this amount would in no way affect the status of the parties as to any amount that may be realized in the future out of the assets belonging to the partnership. Whatever the amounts yet to be realized out of partnership property will be equally distributed between the two partners, and this can have no effect on the matters already determined by the decree of the chancellor.

It results that we find no error in the decree of the chancellor, and all assignments of error are accordingly overruled, and the decree of the chancellor is affirmed. By special order of the chancellor, the clerk and master was directed to take an appeal bond to cover cost

and damages only. The cause will be remanded to the chancery court of Knox county to be further proceeded with, and the costs of this appeal will be paid by appellant and surety on the appeal bond.

Heiskell and Anderson, JJ., concur.