Dean WOLF and Helen Wolf, Appellees,

v.

Janelle MURRANE and Thomas Murrane, Appellants.

No. 54531.

Supreme Court of Iowa.

June 29, 1972.

M. Gene Blackburn, Maxwell, Thomas L. McCullough, Sac City, Roland D. Peddicord and Ronald L. Sutphin, Peddicord, Simpson & Sutphin, Des Moines, for appellants.

W. A. Singer, of Pasley, Singer, Seiser & Pasley, Ames, for appellees.

REES, Justice.

This appeal is from: an order of the district court finding that a partnership composed of plaintiffs and defendants, known as Trans-Travel Agency, engaged in business at Ames, was dissolved on October 31, 1968; the order of the trial court allocating the interest of the partners, and establishing the value of the same; an order appointing a receiver of the partnership property; the alleged sale of the partnership property to the defendants, which defendants contend did not constitute a public sale as the property was not held out for sale to the public generally; and from an order approving the sale of the same by the receivership to the defendants. We are also concerned with the assessment of the costs of the action, the costs of the receivership, and orders of the trial court

overruling defendants' motion to set aside the order of the trial court prescribing instructions to the receiver and overruling defendants' objections to the receiver's final report.

In June of 1966, plaintiffs Dean and Helen Wolf and defendants Janelle and Thomas Murrane entered into a partnership arrangement for the purposes of conducting a business to be known as Trans-Travel Agency, located in Ames. The initial capital was in the amount of $10,000, plaintiffs contributing $5,000, and defendants a like amount. The partnership agreement contemplated net profits and losses were to be shared equally and the account of each partner was to be debited or credited according to the apportionate shares of interest. The partnership was to continue at will and a manner of distribution of the assets upon voluntary dissolution was provided for in the partnership agreement.

On January 8, 1969 plaintiffs filed their petition in equity in the district court, seeking a declaration that the partnership had been terminated as of October 31, 1968, and asking that an accounting be made and a receiver be appointed to take charge of the assets of the partnership until a final distribution could be effected. Defendants, in answer, asserted plaintiffs had voluntarily withdrawn from the partnership and had been in charge of the books of the enterprise and had failed to produce an accounting demanded by defendants. Plaintiffs then amended their petition incorporating a statement as of the close of business—October 31, 1968—showing estimates of the fair market value of the property of the partnership. Defendants denied the accuracy of the statement of financial condition, and demanded a certified audit.

An appraiser called to testify at the trial, after stating his qualifications, testified the fair market value of the partnership as of October 31, 1968 was $9,670.00. Objection was lodged by the defendants to this testi-

mony of the appraiser on the basis the appraisal figure was based on the facts supplied the appraiser by plaintiffs and as such was hearsay. This objection was overruled, and the defendants assert such ruling as one of the propositions upon which they rely for reversal.

The parties were unable to agree on an accountant to audit the partnership, and the trial court appointed one Hoover to act in such capacity. Thereafter, the accountant filed his report with the court showing the financial status of the partnership books as of October 31, 1968, and indicating the value of the partnership as of that date to be $4,761.13, which figure did not include any amounts for pending but unfinished business of the partnership at that date. The entitlement of plaintiffs to participate in any profits realized from such unfinished business is the subject of another of the defendants' propositions relied upon for reversal.

The findings of facts and conclusions of law filed by the trial court embraced the following provisions:

(1) The fees of court-appointed accountant were to be divided equally;

(2) The partnership was dissolved on October 31, 1968, and the value of the assets of the partnership at that time was $8,601.60;

(3) A receiver would be appointed to dispose of the business.

The findings of fact and conclusions of law were not in the form of a final judgment. However, the trial judge, subsequent to the preparation of the findings of fact and conclusions of law, endorsed upon plaintiffs' copy a notation that the findings of fact and conclusions of law constituted a final order.

A receiver was appointed by the trial court on December 12, 1969. In a report subsequently filed, the receiver recommended plaintiff be paid $4,300.80 plus statutory interest from October 31, 1968,

such amount being one-half of the value of the partnership as found by the trial court.

Later, on January 21, 1970, an order was entered by the trial court which in effect is the final order appealed from here. Such order provided, among other things:

(1) Receiver's fees were to be paid from the receivership estate.

(2) Court costs of $127.68 were to be paid from the receivership estate.

(3) The receiver was to pay $4,300.80 to the plaintiffs as their share of the partnership, plus interest at five percent per annum from October 31, 1968.

Defendants thereupon filed a motion to set aside the last above referred to order on the grounds:

(1) The order was entered ex parte;

(2) No notice was given of the filing of the receiver's report;

(3) The sum of $4,300.80 did not represent the value of one-half interest in the partnership;

(4) The proper method of liquidation was by public sale, not sale to a continuing partner;

(5) The manner of assessing costs was in effect an assessment against the interests of the defendants.

A resistance to the receiver's final report was later filed, and after hearing the motion to set aside the order of January 21, 1970, and the resistance to the receiver's report were overruled.

Defendants rely upon eleven separate propositions for reversal. While we regret unduly extending this opinion, we see no alternative but to refer to all of the propositions. They are:

(1) The finding of fact that the total combined value of the partnership interest was $8,601.60 was erroneously based upon testimony of an appraiser who testified to the fair market value of the partnership assets basing his opinion solely upon hearsay evidence supplied him by plaintiffs.

(2) The court's finding of fact that the value of the partnership was $8,601.60 is necessarily based upon a finding from a balance sheet which in itself is insufficient as an accounting to strike a balance between the partners.

(3) A partnership is not terminated until its affairs are wound up by an accounting between the partners, and the court was incompetent to determine the value of the partners' interest until the affairs of the partnership were concluded, including the completion of work then in progress.

(4) The only competent testimony as to value of the partnership is the testimony of the court's witness, an accountant, who based his testimony on profit and loss statements and testified without contradiction that the total value of the partners' combined capital account was $4,761.13.

(5) By accepting the appraiser's method of evaluation, the court adopted an accrual method of accounting which was contrary to the only competent evidence in the record of the partnership agreement which provided for an accounting on a cash receipts and disbursements method.

(6) The uncompleted work or contracts of a service partnership on a cash basis is treated as income and not capital, and a partnership is not terminated until the work is completed, the debts paid and the net income credited to the partnership account.

(7) The court's appointment of receiver without notice and hearing and the actions of the receiver in transferring monies from the receivership assets to plaintiffs without notice and hearing; the court's order prescribing instructions for receiver without notice and hearing; the receiver's application for allowance of fees and the order of court approving same without notice and hearing; and the receiver's final report and court's order approving final

report without notice and hearing to the defendants, were void.

(8) Receiver's sale of plaintiffs' one-half interest to defendants without offering the assets to the highest bidder, such sale being conducted without notice and hearing was, in effect, a forced sale to defendants and was an improper method of winding up partnership affairs;

(9) The ex parte sale of plaintiffs' one-half interest to defendants without an allocation of all costs between the parties is in effect an assessment against the defendants of all costs of dissolution, and is contrary to the proper methods of winding up the affairs of a partnership.

(10) The receiver acted beyond the authority delegated him by the court and by the laws of the state of Iowa when he forced defendants to purchase the property without offering the same to the highest bidder.

(11) The receiver was without authority to charge defendants' capital account with costs and interest from the date of termination of the partnership for the reason there was no judgment decreeing payment of interest.

■ I. We must first determine whether trial court's "Findings of Fact and Conclusions of Law" and the subsequent endorsement thereon by the trial judge that it was a "Final Order" constitutes such final judgment as comes under the purview of Rule 331, Rules of Civil Procedure. In this respect, plaintiffs maintain trial court rendered a valid final judgment on December 8, 1969, and that notice of appeal not having been filed within thirty days, as required by rule 335, R.C.P., is not sufficient to perfect an appeal and the appeal must be dismissed. The notice of appeal was filed by defendants on March 3, 1970.

■ We find no merit in plaintiffs' assertion the appeal must be dismissed. No specified or particular form need be used in rendering judgment. Batliner v. Sallee, 254 Iowa 561, 564, 118 N.W.2d 552, 554; 46 Am.Jur.2d, Judgment, § 64, pp. 358–359; 49 C.J.S. Judgments § 62(a), pp. 180–181. Sufficiency of a judgment shall be gleaned from its substance rather than form. Whittier v. Whittier, 237 Iowa 655, 662, 23 N.W.2d 435, 440; 46 Am.Jur.2d, Judgment, § 64, p. 359; 49 C.J.S. Judgments § 62(a), pp. 180–181. The law is, and should be, that a judgment must be certain and in intelligible form so the parties understand the adjudication. Brody v. District Court of Pottawattamie Co., 250 Iowa 1217, 1224, 98 N.W.2d 726, 731; Lynch v. Uhlenhopp, 248 Iowa 68, 72, 78 N.W.2d 491, 494; Whittier v. Whittier, *supra,* 237 Iowa at 662, 23 N.W.2d at 440; 46 Am. Jur.2d, Judgment, § 67, p. 360; 49 C.J.S. Judgments § 72, p. 191. Though the judgment may contain findings of fact and conclusions of law, it is only the decretal portion of the judgment that constitutes an adjudication. Iowa Public Service Co. v. Sioux City, 254 Iowa 22, 27, 116 N.W.2d 466, 468; In re Cohen's Estate, 216 Iowa 649, 653, 246 N.W. 780, 782; Higley v. Kinsman (not officially reported in Iowa), 216 N.W. 673, 676; 46 Am.Jur.2d, Judgment, § 78, p. 366; 49 C.J.S. Judgments § 71(c), pp. 190–191.

In the matter before us, trial court did not render such final adjudication as to inform the parties to the litigation of the result in understandable form in order that they could comprehend which of their rights had been affected. There is no decretal portion in the court's "Findings of Fact and Conclusions of Law", and it therefore does not fulfill the requirements of a judgment and is not a final judgment for the purposes of rule 331, R.C.P. Our conclusion is further reinforced by the fact trial court obviously did not consider its order final, as it held further proceedings and entered additional orders in the matter after the date of the filing of the "Findings of Fact and Conclusions of Law" which plaintiffs contend was a final judgment.

In any event, defendants maintain they are appealing from the later proceedings in connection with the receivership. We conclude the notice of appeal effectually perfected appeal to this court.

II. Defendants contend testimony of the plaintiffs' witness, Thompson, the appraiser, was based upon hearsay, and objections thereto were improperly overruled by trial court.

■ While we have repeatedly said trial courts are vested with broad discretion in determining the admissibility of expert opinion [see State v. Knudtson, 195 N.W. 2d 698 (1972); State v. Mayhew (Iowa 1969), 170 N.W.2d 608, 619; Schmitt v. Jenkins Truck Lines, Inc. (Iowa 1969), 170 N.W.2d 632, 651; Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N. W.2d 646, 654; 31 Am.Jur.2d, Expert and Opinion Evidence, § 3, p. 497; 32 C.J.S. Evidence § 449, p. 85], we have also stated the discretion ceases when the record shows as a matter of law that the witness is not qualified or the facts on which the opinion is based are not sufficiently stated by the witness and are challenged as incompetent by timely and proper objection. Bernal v. Bernhardt (Iowa 1970), 180 N. W.2d 437, 439; Hedges v. Conder (Iowa 1969), 166 N.W.2d 844, 857–858; Dougherty v. Boyken, 261 Iowa 602, 614–615, 155 N.W.2d 488, 495.

In Dougherty, supra, we held the admission of expert opinion, based in part on hearsay, was error. In so holding, we said:

"Before it can evaluate an expert's opinion, the jury must know what it is founded on. This may be done by having the witness state what facts he relies on and their source or by having facts assumed to be true by way of hypothetical question. Neither was done here. Rather the witness stated he had obtained from Sergeant Angle in an out-of-court discussion the results of an investigation carried on by the officer. He did not say what those results were.

Under such circumstances Dr. Nelson's opinions were no more than conjecture, speculation and surmise."

(261 Iowa at 614, 155 N.W.2d at 495).

And again, in Bernal v. Bernhardt, supra, at page 441 of 180 N.W.2d, we said,

"Before a witness who has been qualified as an expert in the pertinent field can express his opinion on the particular issues involved, whether he is testifying in whole or in part from his personal knowledge and observation or in response to a hypothetical question, the facts upon which the opinion is based must be stated by the witness or in the hypothetical question. From this evidence the court, in the first instance, can determine whether the factual foundation is sufficient for a valid opinion or the answer would be nothing more than mere conjecture or guess, and the trier of fact, in the last instance can determine whether the alleged facts justify his conclusion. The acceptance or rejection of opinion testimony does not depend upon the expert's abstract qualifications alone." (and cases cited). But see, State v. Wineberg, 74 Wash.2d 732, 444 P.2d 787, 794.

■ In the light of our pronouncements in Dougherty and Bernal above, we have examined the record exhaustively, and determine the expert opinion evidence of the witness Thompson was improperly admitted. The witness clearly stated the only basis for his opinion was information supplied by plaintiff, Dean Wolf. The witness admitted having examined neither the books of the business nor the tax returns for prior years, and the record indicates those two items were never available to him despite his request to examine the same.

We therefore conclude the trial court erred in overruling objections to the valuation testimony of the appraiser Thompson on the ground the same was hearsay. We observe, however, the court in its findings

of fact did not base its own value findings on Thompson's testimony, electing to place reliance on the testimony of the accountant Hoover in arriving at the value figures. Since we are reversing for the purpose of setting the value of the unfinished business of the partnership, such may now be established by competent testimony.

III. Defendants assert the court-appointed accountant, one Hoover, was the only witness whose testimony was competent as to the valuation of the partnership assets, and who testified, basing his testimony on profit and loss statements, the total value of the partnership's combined capital account was $4,761.13. By asserting the testimony of Hoover is the only competent testimony in the record as to the value of the partnership, defendants seek to discredit the testimony of the appraiser Thompson.

In Schmitt v. Jenkins Truck Lines, Inc., *supra*, 170 N.W.2d at 651, we said:

"Where the witness has disclosed a sufficient knowledge of the subject to entitle his opinion to go to the jury the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility. Marean v. Petersen, 259 Iowa 557, 564, 144 N.W.2d 906, 910."

We find the assertion of the defendants in this area to be without merit, based upon our pronouncements in Schmitt v. Jenkins, *supra*.

IV. We now turn to what appears to be the nub of the controversy—the valuation of the assets and subsequent distribution of the partners' apportionate shares thereof.

Insofar as the partnership agreement covers the relationship of the parties, it is a contract between them. Myers v. Blinks, 232 Iowa 1238, 1243, 7 N.W.2d 819, 821; Levi v. Karrick, 8 Iowa 150, 152; 59 Am.Jur.2d, Partnership, §§ 19, 20, p. 944; 68 C.J.S. Partnership § 3, p. 406.

The provisions of the partnership agreement which are pertinent here are:

"14. THAT at any voluntary termination of this partnership a full and accurate inventory shall be prepared and assets, liabilities, and income both gross and net shall be determined. The debts of the partnership shall be discharged and all monies and other assets of the partnership, then remaining, shall be divided in specie between the parties, share and share alike.

\* \* \*

"16. THAT in the event of any disagreement between the two parties in respect to the conduction of the partnership business or any other matter relating to the partnership and for which there is no basis of settlement expressly provided in this document, the disagreement shall be decided and resolved by a three-member board of arbitrators to be named 30 days after either party notifies the other party by certified letter requesting a decision by arbitration. \* \* \*"

The principal controversy as to the valuation of the assets centers upon the treatment of the value of the pending but unfinished business as of October 31, 1968. Aside from the contract provision for arbitration, there is nothing to dictate the manner in which the value of unfinished business at dissolution shall be handled. This was not truly a voluntary dissolution, as it was brought about by judicial decree. Attempts to arbitrate had been made unsuccessfully, and the action was then instituted in the district court.

During its viable existence, the partnership operated on a cash receipts and disbursements accounting basis. Defendants insist the accounting and the distribution of the assets upon dissolution should be made on such a cash basis, which would not include any amount for profits on business unfinished at the date of dissolution —October 31, 1968. Plaintiffs, on the other hand, insist the proper method of ac-

counting at dissolution must necessarily include profits on business unfinished at the date of dissolution but later finished.

■ Upon dissolution, the partnership relationship ceases to exist except insofar as it is necessary to continue to wind up the affairs of the partnership. The effect of dissolution is stated in 60 Am.Jur.2d, Partnership, § 198, p. 111:

"* * * Both under the Uniform Act (referring to Uniform Partnership Act, adopted in Iowa, Chapter 251, Laws of the Sixty-fourth General Assembly, First Session, 1971, but not applicable to this case) and at common law it is recognized that after dissolution, the partnership continues only for the purpose of winding up the partnership affairs. Dissolution operates only with respect to future transactions; as to everything past, the partnership continues until all preexisting matters are terminated. Included in the winding up or liquidation of partnership affairs are the performance of existing contracts, the collection of debts or claims due the firm, and the payment of firm debts."

See also 68 C.J.S. Partnership § 351, at pp. 859–860.

■ When we apply the above pronouncement to the facts in the instant case, it becomes apparent the profits earned on business unfinished as of the date of dissolution are, and should be, considered in the winding up process, and included in determining the amount available for final distribution to the partners. In this respect, the appraiser, Thompson, did include the unfinished business profits in his value figures, but also valued the assets on the basis of an ongoing business concern. The court-appointed accountant, Hoover, used a year-end profit and loss statement which did not include any consideration of unfinished business.

■ All of the business of the partnership must be completed before distribution can be made. A final accounting of a partnership upon dissolution must take into consideration all of the assets of the partnership.

Trial court determined the amount available for distribution to the partners to be $8,601.60. In doing so, it started with the amount the accountant computed as attributable to the partners, $4,761.13. It then added thereto the amount the accountant arrived at on his balance sheet as attributable to the unfinished business, $3,840.47. The court then divided the total, $8,601.60, in half and ordered payment of half of the figure to plaintiffs with costs to be paid out of the receivership estate.

This determination by trial court in arriving at the amount of each partner's share, brings two complaints to us:

(1) The balance sheet, in and of itself, is insufficient for an accounting;

(2) The order of the trial court for the payment of $4300.80 to plaintiffs, with the payment of costs to follow the receivership estate, was in effect a judgment for costs against the defendants.

We agree with both contentions, but do not reach the same result as that reached by defendants.

■ The balance sheet and the computation thereon were supported by supplemental documents. Further, the defendants have introduced no evidence of error in the computation of the accountant save for their complaint the amount placed on the unfinished business is inaccurate. We hold the balance sheet supported as it was by other evidence was sufficient for the accounting.

■ As to the assessment of costs, we agree the trial court was in error. All of the costs of the accounting, court costs and receiver's costs should have been first paid out of the receivership estate, and the remainder should have then been divided equally between the partnership interests.

Defendants attempted to introduce evidence at a later hearing as to the actual amount of profit attributable to the unfinished business as of October 31, 1968 but now completed. Trial court refused to allow the reopening of the case for such purpose. We believe this to have been error and will remand for determination of that figure.

V. Generally, a court may not appoint a receiver without notice and a reasonable opportunity for interested parties to be heard prior to the appointment of a receiver. Rouse v. Rouse (Iowa 1970), 174 N.W.2d 660, 665–666; 45 Am. Jur., Receivers, § 90, p. 81; 75 C.J.S. Receivers §§ 48–49, pp. 704–710. In emergencies where a showing is made that ex parte appointment of a receiver is necessary to prevent damage to or loss of property, the court may exercise its discretion in appointing without notice. Rouse v. Rouse, *supra*, 174 N.W.2d at 665. In the instant case, no circumstances appear which would indicate there was no time for a hearing. The ex parte appointment of a receiver in this case served only to confuse the parties to the suit and to unduly extend the length of this opinion.

Despite the disregard of the general rule requiring a prior hearing, we find nothing to indicate that either of the parties was prejudiced to the point of being denied a fair result and since our review here is de novo (rule 334, R.C.P.) reversal on this issue alone would serve no useful purpose. Therefore, without approving trial court's actions and noting the irregularity of the appointment without notice, we shall not reverse solely on the failure of the trial court to hold a hearing pursuant to notice prior to the appointment of a receiver.

VI. Defendants next contend the trial court's order for the receiver to pay the sum of $4300.80 to plaintiffs was, in effect, forcing a sale to the defendants and contrary to the proper method of winding up a partnership.

In the ordinary dissolution of a partnership, the net assets would be determined after all the affairs of the partnership had been concluded and wound up, and a distribution among the partners according to their respective shares would ensue. See generally 60 Am.Jur.2d, Partnership, §§ 171–300; 68 C.J.S. Partnership §§ 330–448.

The matter before us, however, is complicated by the fact defendants desire to, and are in fact, carrying on the business as a going concern. The record clearly reflects defendants' desire to operate the business on a continuing basis. The distribution to the withdrawing partners of their share upon dissolution of the partnership, appears to be a sale to the continuing partners. We conclude there is nothing in the fact situation here which indicates the sale to defendants could be categorized as a forced sale.

We believe the method of winding up the partnership by allowing one of the partners to continue the business is a proper method of winding up such a relationship. The defendants desired to continue the business, and the plaintiffs wanted out. There was no evidence offered of a more advantageous or expedient method of effecting dissolution than was employed by the receiver. Public sale to a stranger, albeit a higher bidder, might well have resulted in a lesser amount being realized to plaintiffs and a windfall to defendants, as there was no indication of any prospective purchasers. On the facts before us, we do not believe the method of dissolution adopted by the receiver was improper.

VII. The real question for determination by us is whether the division of the assets was fair to both parties. We have already concluded the treatment of the costs was unfair as to the defendants and have indicated a remand to correct the same.

A further question is whether the assets of the partnership reflect a val-

ue for good will upon dissolution. Ordinarily, good will is an asset of a partnership, and unless it is without value, should be accounted for upon dissolution. See Anno., 65 A.L.R.2d 521; 60 Am.Jur.2d, Partnership, § 282, pp. 184–185; 68 C.J.S. Partnership § 396, pp. 910–912. In determining the value of good will attributable to the business, the past record of the business may be of some assistance. See Anno., *supra*, 65 A.L.R.2d at 526–529; 68 C.J.S. *supra*, at 910. The court-appointed accountant, preparing the "Statement Reconciliation of Net Assets as of October 31, 1968", placed a value of $500 on the good will of the partnership. Admittedly, the partnership has not reflected financial success in the past, but throughout the record it is apparent the prospects of its future success are bright. When one partner succeeds to all of the interests of a partnership and the future of the enterprise looks promising, the successor in interest should be required to pay some amount for the good will of the business. We believe the value of $500 for the good will of the partnership to be fair, and so hold.

VIII. Defendants present to us the question as to whether trial court was justified in awarding interest on plaintiffs' share of the assets from the date of dissolution, October 31, 1968.

■ The general rule, in absence of a written agreement to the contrary, is that interest is not to be allowed on partnership assets until after a balance has been struck; however, interest may be charged under the circumstances of the case, if the equities require. McFarland v. McCormick, 114 Iowa 368, 370, 86 N.W. 369, 370; 60 Am.Jur.2d, Partnership, § 285, p. 187; 68 C.J.S. Partnership § 397, pp. 913–914. See also Engstrom v. Larson, 79 N.D. 188, 55 N.W.2d 579, 589.

As noted in Division I, trial court did not render a valid final judgment at the time of the filing of its findings and conclusions; nevertheless, it found the value of the partnership to be $8601.60. At all

times following October 27, 1969, the date of the striking of the balance, defendants were in full control and had the full use of the entire assets of the partnership. As noted in his report to the court, the receiver on January 23, 1970 disbursed plaintiffs' share of $4300.80, plus interest from October 31, 1968.

> "Where one partner retains in his hands, and uses, funds of the partnership during the pendency of settlement thereof, he should be required to pay interest on the balance found to be due the other partners. * * *" 68 C.J.S. Partnership § 397 at 914. See also 60 Am.Jur. 2d, Partnership, § 300, at 197.

Defendants maintain there never was a judgment upon which interest could be ordered. In the light of the trial court's efforts to denominate its findings and conclusions as a final judgment, and the deficiencies in such findings and conclusions, to meet the requirements of a valid final judgment as discussed in Division I, *supra*, we must agree with defendants' contentions. We do not, however, agree that absent a judgment therefor, interest may not be awarded in this case. The record clearly reflects an order by the trial court in its instructions to the receiver to pay interest at the statutory rate. The intent of the trial court as regards interest is clear—it was to be paid.

■ Actions for accounting and dissolution of partnerships sound in equity and receive a *de novo* review at our hands. Rule 334, R.C.P.; Owen v. Wilden Hospital, 245 Iowa 382, 388, 62 N.W.2d 186, 187. We will review the facts as well as the law and enter what conclusions we deem proper. In re Augustus (Iowa 1968), 158 N.W.2d 625, 627.

■ We conclude the trial court should have, and did attempt to enter a judgment allowing the payment of interest for the reasons above set out. In the absence of such a judgment, we so decree. Interest was allowable at the statutory rate from

the date the balance was struck, October 27, 1969, to the date actual disbursement to the plaintiffs of their share was made.

XI. We conclude, in summary:

(1) The "Findings of Fact and Conclusions of Law" entered by the trial court was not a final judgment for purposes of the application of rule 331, R.C.P., and to require notice of appeal to be served within thirty days thereafter.

(2) The appraiser's testimony based on information supplied him was improperly received.

(3) The testimony of the court-appointed accountant was not entitled to more dignity as a matter of law than the testimony of the appraiser as to value.

(4) The unfinished business of the partnership was properly included in the trial court's determination of the amount available for distribution, but in light of the fact the business was concluded during the pendency of the action the court should have reopened the hearing for the ascertainment of the real value of the unfinished business.

(5) The balance sheet supplemented by other statements and evidence was sufficient for striking a balance in the partnership.

(6) The trial court incorrectly assessed the costs, placing the burden of paying the same upon defendants.

(7) Ex parte appointment of the receiver was improper, but reversal on that point would only prolong litigation and no prejudice resulted to defendants therefrom.

(8) The actions of the receiver in distributing the assets of the partnership did not result in a forced sale to the defendants.

(9) Trial court should have properly included in its consideration of the assets of the partnership an amount for good will.

(10) Interest should have been awarded on plaintiffs' share from the date of strik-ing of balance in the accounts—October 27, 1969—to date of distribution by the receiver.

■ X. This court, when essential to effectuate justice, may remand an equity case for further proceedings as the circumstances require. Sears, Roebuck & Co. v. Nelson, 230 Iowa 936, 938, 299 N.W. 398, 399.

We, therefore, remand this case to trial court for proceedings as follows:

(1) Trial court shall determine, pursuant to further hearing, the actual value of the unfinished business of the partnership as of the date of dissolution but later completed.

(2) The value of the unfinished business so determined by the trial court, plus the sum of $4761.13 (the value as determined by the accountant), plus the sum of $500 for good will, shall be treated by the trial court as the gross sum for accounting purposes.

(3) The court shall then compute the net sum for distribution by deducting all of the costs of this action, including appeal costs, accounting fees, appraiser's fees, and receiver's fees, and shall divide the remainder equally between plaintiffs and defendants.

(4) Interest at the statutory rate shall be calculated on the newly found share of plaintiffs from October 27, 1969 to the date of distribution.

Trial court shall thereupon enter a valid and proper judgment reflecting the above. This case is therefore affirmed in part, modified in part, and remanded for further proceedings in conformity with this opinion and the foregoing instructions.

Affirmed in part, reversed in part and remanded with instructions.

All Justices concur except RAWLINGS, J., who concurs in result, and HARRIS and McCORMICK, JJ., who take no part.