KENNETH JACOBSEN, a minor, by his next friend, ALVIN
JACOBSEN, appellee, v. HUGO R. GAMBER, appellant.

No. 49247.

(Reported in 86 N.W.2d 147)

November 12, 1957.

A. Fred Berger and Robert J. Shaw, both of Davenport, for appellant.

Walter A. Newport, Jr., and Donald A. Wine, both of Davenport, for appellee.

Thompson, J.—On September 26, 1956, at approximately 11 a.m., the trial court submitted to the jury plaintiff's suit for damages for personal injuries alleged to have been sustained in a collision between a pickup truck in which he was riding and an automobile owned and driven by the defendant. The jury then retired to deliberate upon its verdict. The trial judge was not a resident of Scott County and wished to leave immediately. A sealed verdict having been decided upon, the court directed the bailiff in charge of the jury to dismiss the jurors if they had not agreed by 10 p.m.

About 10:10 p.m. the bailiff called one of plaintiff's counsel and advised him of the order to dismiss the jury. Counsel immediately went to the courthouse, where he found one of defendant's attorneys and the bailiff. Plaintiff's attorney then told the bailiff that in view of the length of time the trial had consumed he thought it would be better to give the jury some additional time. Apparently defendant's counsel made no objection. However, the bailiff said he must obey the order of the court. Counsel then said "Do your duty." The bailiff did, however, advise the foreman of the jury that he was, in the words of the

foreman of the jury as shown in the latter's affidavit, "empowered to dismiss the jury" if they had not reached a verdict by 10 p.m. The foreman in effect asked for additional time. The bailiff thereupon called Judge Charles G. Rehling, at that time another judge of the Seventh Judicial District, who resided in Davenport, and was by him instructed to permit the jury to deliberate until twelve o'clock before dismissing them. Whether this was communicated to the jury does not appear; but at about 10:55 p.m. the jury returned its sealed verdict, which was for the defendant. A motion for new trial was made by the plaintiff, and granted by the court upon the sole ground that "The Court cannot help but feel that the action of the bailiff hastened the jury in their deliberations." Other grounds of the motion for new trial were denied; attention will be given to them later in this opinion.

I. The trial court in its ruling said:

"The effect of this procedure [the bailiff advising the jury of the order to dismiss] in the eyes of the Court was tantamount to the Court instructing the jury that they had already devoted too much time to their consideration of a proper verdict and that they should have been discharged a matter of some twenty minutes prior to being so notified and was an improper influence to exercise upon the jury.

"The Court knows as a matter of fact that this was the first case that this jury had had occasion to serve upon, that they were, therefore, unacquainted with the ordinary procedure in jury trials and that they undoubtedly interpreted the action of the bailiff as an indication of a rule they must arrive at a decision promptly, or else.

"* * * His [the Court's] complaint is addressed to the fact that the proceedings unduly hastened the jury in arriving at their verdict and amounted to the giving of a verbal instruction to them in violation of law."

It is apparent the question before us at this point is whether the court was within its fair discretion in granting a new trial for the reasons stated. "Abuse of discretion" in effect means no discretion to do what was done. It is not a term of

opprobrium, but only of error in arriving at the conclusions thought to sustain the ruling made. It is thoroughly settled that the trial court has a large discretion in granting motions for new trial. But this is not unlimited. It is a legal discretion, and can be exercised only for sound judicial reasons. Sparks v. Long, 234 Iowa 21, 23, 11 N.W.2d 716, 718; Eller v. Paul Revere Ins. Co., 230 Iowa 1255, 1260, 300 N.W. 535; Henderson v. Edwards, 191 Iowa 871, 183 N.W. 583, 16 A. L. R. 1090. We have not hesitated to reverse grants of new trials when the trial court's order was not founded upon sound principles and reasoning. The discretion exercised must be based upon the record. Copeland v. Junkin, 198 Iowa 530, 534, 199 N.W. 363, 364. Verdicts should not be set aside lightly; the court, in proclaiming the basis for the grant of a new trial, must be sure that it shows a sufficient ground to support its exercise of discretion. A litigant is, as we have said, entitled to a fair trial, but to only one fair trial. Sparks v. Long, supra, page 23 of 234 Iowa, page 718 of 11 N.W.2d 716.

II. Our examination must be to discover whether the reason given by the able trial court is judicially logical and adequate to support the ruling made, within the bounds of a fair discretion. We are constrained to conclude that it is not.

Of course, the court's statement that the bailiff's communication to the jury amounted to an oral instruction can be given no weight. Nor can there be said to have been any misconduct of the bailiff or of the jury in any real sense. The bailiff did nothing more than to advise the jury he was empowered to dismiss it at 10 p.m. if a verdict had not been reached; and in so doing he was carrying out the express order of the court. It is also of some significance to note, as shown by the affidavit of William F. Iten, the jury foreman, that after receiving the word from the bailiff as to dismissal, he told the other jurors that while it was important that a verdict be reached, "that should anyone feel that they were compromising a principle or would be unable to sleep with their conscience, they should not change their vote."

Cases in which, either in verdict-urging instructions or in verbal admonitions or statements made directly by the court to the jury or communicated through a bailiff, coercion or alleged

coercion of the jury has been considered are numerous. But in these, almost without exception, as related to time, the claimed pressure consisted of threats or implications that the jury would be kept together for a considerable period if a verdict was not sooner reached. In some of them, allusions were made to the inconveniences the jurors would suffer while being detained; in some, they were told of the expense to the county of another trial; some contain expressions, veiled or otherwise, of the court's opinion of what they should do. Cases in which the exact situation we have here appeared are apparently not to be found; at least neither of the litigants has given us any citation which we deem squarely in point, nor have we found any. There are several, however, which approach the one in the case at bar, particularly in the reasoning adopted upon more or less closely similar facts.

In Hopkins v. Sawyer, 84 Maine 321, 24 A. 872, the court instructed the bailiff to permit the jury to separate if they had not agreed upon a verdict by 1 a.m. When the jurors were so advised, they replied that they wished to agree. Between 2 and 3 a.m. they reached a verdict. The Maine Supreme Court found no error. In Leonard v. Hume, 5 Cal. App. 2d 41, 43, 41 P.2d 965, 966, after the jury had deliberated for some hours, at about 9:45 p.m. the bailiff advised the jurors that he must give the hotel thirty minutes' notice whether they would be sent there for the night, and said he would give them fifteen minutes to agree upon a verdict. Presumably he meant that he would wait that long before notifying the hotel. They reached a verdict within the prescribed time. The California Appellate Court gave a claim of error based upon these facts scant consideration, saying: "If true, this did not constitute undue influence by the bailiff."

Kahan v. Pure Oil Co., 186 Okla. 493, 494, 98 P.2d 894, 895, dealt with a situation in which the jury, after several hours' deliberation, reported to the court that it could not agree. The court told the jurors it wished them to deliberate longer, " 'at least until twelve o'clock' "; also saying that it did not wish any man to compromise his honest convictions (as the foreman of the jury did in the instant case). The jury returned a verdict in

about thirty minutes. No error was found. In Brady v. St. Louis Public Service Co., 361 Mo. 148, 233 S.W.2d 841, it appeared that about 4:40 p.m. the court advised the officer in charge of the jury to ascertain if it would be ready to report in ten or fifteen minutes. Within the prescribed time the jury reported its verdict. The Missouri Supreme Court found no reversible error in the trial court's holding that the verdict was not coerced.

In Alcorn v. Cudahy Packing Co., 125 Kan. 493, 264 P. 741, 742, the jurors having deliberated from Friday afternoon until 11:30 Saturday morning, the court advised them that if they could reach a verdict by 1 or 1:30 p.m. it would be there to receive it; otherwise at 1:30 it would instruct them how much longer to continue their deliberations. The Kansas Supreme Court found no coercion.

In our own case of State v. Peirce, 178 Iowa 417, 424, 159 N.W. 1050, 1054, cited and relied upon by plaintiff, we said of verdict-urging instructions that they "are erroneous if their language (1) indicates an intention to coerce into agreement, or (2) suggests that the jury would be kept together until it agreed." In Armstrong v. James & Co., 155 Iowa 562, 572, 136 N.W. 686, 690, we said: "As already indicated, the instruction complained of did not of itself hasten the verdict. It did not come until the additional instruction was given, and the record shows that the court was about to discharge the jury when the foreman sent word that, *if they were given a little more time, he thought they could agree.* [Italics supplied.] After waiting an hour and a half, they did agree and came in with the verdict." See also State v. Poffenbarger, 247 Iowa 552, 557, 558, 74 N.W.2d 585; State v. Gallagher, 236 Iowa 123, 128, 129, 16 N.W.2d 604, 605, 606.

Pierce v. Pierce, 38 Mich. 412, also cited by plaintiff, holds only that a message to the jury from the court that it was essential they agree, since the judge was leaving that night, was coercion. It is of the common pattern of undue pressure upon the jury for fear of being held longer, or of the need for bringing in a verdict for some other reason.

But in the case at bar there was no slightest act or word of the court or of the bailiff which, fairly construed, would coerce

the jurors. It is true the cases we have cited above which we think come closest to the question before us do not discuss it from the point of whether the trial court would have abused its discretion if it had granted a new trial. We have cited them for the reasoning expressed. But we find no support for exercise of judicial discretion here as the court did. In the language of State v. Peirce, quoted supra, we find nothing expressing an intention to coerce the jury or to suggest the jurors would be kept together until they agreed. On the contrary, the word conveyed to the jury by the bailiff by order of the court said merely that they would be dismissed. It was at the jury's own request that it continued its deliberations. Apparently it was the thought of the trial court that the knowledge that they were about to be dismissed put some pressure upon some of the jurors to agree. This seems to us unsound. It is as reasonable to suppose that the juror, or jurors, who did not wish to surrender their convictions would be encouraged to maintain them, knowing that they would shortly be discharged. No penalty was expressed or implied if agreement was not reached; the only reason that fairly appears why the jury did not accede to the bailiff's statement that he was empowered to dismiss them was that they were balloting, and wished for more time. It was the jurors' own request that kept them in session thereafter. They were the masters of their fate. Here, as in Armstrong v. James & Co., supra, the court was about to discharge the jury when it asked for more time. We said then, as now, that we find nothing in the situation which coerced the jury or unfairly hastened the verdict.

Holding, as we do, that no sound, logical judicial reasoning supports the holding that the jury was unduly coerced or pressurized, we must further conclude that the grant of a new trial on this ground was beyond the fair discretion of the court.

III. The defendant attacks the bill of exceptions signed by one of plaintiff's counsel and certified by the trial judge. This stated the facts of what happened on the evening of the jury's deliberation. Much of it, of course, did not happen in the presence of the court, and some of it is hearsay. However, there are also affidavits of the respective attorneys, of the foreman of the jury, and of Judge Rehling, which give a fairly clear picture of the material events.

It is also contended by the defendant that plaintiff's counsel waived any right to object to the method of handling the jury by his statement to the bailiff that he thought it should be given some additional time. We have not attempted to determine these matters, but have preferred to meet the question of claimed undue pressure upon the jury squarely, and directly.

■ IV. The plaintiff's motion for a new trial included grounds other than the one discussed above. These the court denied; but if any of them were sound, and should have been sustained, the plaintiff is entitled to urge them here, and to have an affirmance if we so find. State v. Eichler, 248 Iowa 1267, 1274, 83 N.W.2d 576, 580.

■ The alleged errors made by the trial court as argued by the appellee here concern the failure of the court to instruct upon and submit by proper instructions specifications of negligence in regard to speed and passing on a curve. The original record contained no instructions of the court. On August 8, 1957, a supplemental record was settled by the court, upon plaintiff's application under R. C. P. 341, which showed an instruction requested by the plaintiff, Instructions Nos. 10 and 11 as given by the court, and plaintiff's exceptions to instructions. On August 27 the appellant filed his reply argument, pointing out the well-settled rule that we do not consider errors based upon requested instructions not given or upon claimed erroneous instructions actually given, unless the instructions are set out in their entirety. Thines v. Kukkuck, 228 Iowa 1081, 1083, 293 N.W. 58, 59, and cases cited. On September 9, 1957, the trial court, upon application of the plaintiff and over the objection of the defendant, again amended and settled the record by ordering the entire set of instructions included. The second supplemental record was filed in this court on September 11, 1957.

That there is something more than a technical injustice in permitting this second amendment to the record, correcting it at a vital point, after the defendant's reply brief and argument had been filed and the defect stated and argued, must be apparent. But since trials on the merits are favored and the defendant has not attacked the second amendment we shall consider it as part of the record.

By a requested instruction and by exception to the instructions given the plaintiff raised the question of the failure of the trial court to submit and instruct upon the issue of speed as a ground of negligence of which the defendant was guilty. Likewise by exception to instructions the question of failure to submit unlawful passing on a curve was saved to the plaintiff. The specifications of negligence which plaintiff in argument says required the submission of these specifications are 23(a), traveling at a high and excessive speed; 23(h), failing to drive at a careful and prudent speed not greater than was reasonable and proper and with due regard for existing conditions, in violation of section 321.285; and 23(i), failing to reduce his speed to a reasonable and proper rate when approaching a curve in violation of section 321.288.

The accident and collision occurred as the defendant was returning to the right side of the highway after having turned to the left in order to pass the pickup in which the plaintiff was riding as a passenger. Both vehicles were traveling in the same direction, with defendant's automobile going somewhat faster. We shall accept plaintiff's version that the collision occurred because the defendant cut in too soon after passing, as his evidence indicates, for the purpose of our consideration here. But even giving the evidence this most favorable viewpoint, we are unable to agree that there was anything to submit to the jury upon the issues of speed and passing on a curve. If we assume that there was evidence of these elements, we are unable to see how they can be considered as proximate causes of the accident. It is plaintiff's theory that the collision was caused by defendant's negligence in driving to the right side of the roadway before his car was safely clear of the vehicle being passed. No complaint is made that the court did not properly submit this issue.

We agree that proximate cause is ordinarily for the jury. But this is not always so. The facts in Berridge v. Pray, 202 Iowa 663, 666, 210 N.W. 916, 917, were somewhat like those in the case at bar. A collision occurred between the passing and the overtaken car. The trial court submitted three grounds of negligence, and we reversed, saying that the only one which could have had any causal connection was the one which alleged that the defendant (driver of the overtaken car) accelerated speed

and turned his car to the left against the plaintiff's vehicle after he had been passed.

Brewer v. Johnson, 247 Iowa 483, 486, 487, 72 N.W.2d 556, 558, is also much in point. Here a collision occurred between two automobiles going in the same direction, defendant's car striking plaintiff's vehicle in the rear. The accident occurred within one hundred feet of a railroad grade crossing. Section 321.304 of the Code prohibits driving to the left side of the highway for the purpose of passing another vehicle within this distance from a railway crossing. The trial court instructed upon this point telling the jury that if defendant attempted to pass plaintiff within the prohibited distance he was negligent, unless acting in an emergency. We reversed, saying: "* * * the proximity of the railroad grade crossing and the injuries sustained lack that proximate causation essential to recovery. It may be said, that if defendant had not attempted to pass at this point the injury would not have happened; but to adopt this view is to say that since an injury resulted that fact alone may supply the causation. Such is not the law. * * *.

"* * * It seems crystal-clear that under like circumstances the same results would follow had they occurred at a point miles removed from the railroad grade crossing."

If we substitute the curve here for the grade crossing in Brewer v. Johnson, supra, the reasoning there applies exactly. There is no evidence that the fact of the curve was in any manner material in causing the collision. So far as this record shows, the same thing would have happened under the circumstances, on a straight highway. Likewise as to speed; it is not pointed out how the defendant's excessive speed contributed in any way to cause the collision. Perhaps, if we assume such excessive speed, it might be said that if he had not driven so fast he would not have overtaken the pickup truck at all, and so there would have been no collision. But this is not what is meant by proximate cause. It could as well be argued that if the defendant had not left home that evening, or had taken another road, or had started a few minutes sooner, or later, no accident would have happened. The fact is that there was here, as in Brewer v. Johnson, supra, a new and independent cause intervening; this cause being defendant's negligence in cutting in too soon after pass-

ing, if we accept plaintiff's theory of the case. And as to speed we can say, as we did in Berridge v. Pray, supra, page 667 of 202 Iowa, page 917 of 210 N.W.: "It might be said, in such case, that excessive speed on the part of the appellee [defendant in the case at bar] would have tended to avert, rather than to cause, the collision."

The plaintiff relies heavily upon and quotes at great length from Christensen v. Sheldon, 245 Iowa 674, 63 N.W.2d 892, 48 A. L. R.2d 522. In that case the plaintiff was a passenger in the passing vehicle, a jeep, which had overtaken defendant's tractor-trailer unit. The pavement was covered with wet snow and was icy and slick. The vehicles were proceeding downhill as the jeep attempted to pass. The defendant's truck was traveling at fifty miles per hour and another car, coming from the opposite direction, was in view. We held that a specification of excessive speed under the circumstances should have been submitted. The decision was sound; but the facts are far away from those in the case at bar. It is clear that the defendant's speed in the Christensen case could have been found to be excessive, and to have contributed to the collision. The jury could have found that the jeep, its driver seeing the approaching car, cut in too soon and struck or was struck by the defendant's tractor. This in turn threw it into the path of the oncoming third vehicle. Whether the speed of the defendant's vehicle kept the jeep traveling on its left side of the road until danger of collision with the third car was imminent and so contributed to the damage was clearly an issue for the jury to determine. The case has no relevancy here.

We conclude that the trial court rightly refused to submit the issues of excessive speed and passing on a curve. We think the plaintiff had a fair trial in all respects. The cause is reversed and remanded, with directions to reinstate the verdict of the jury and to render judgment accordingly.—Reversed and remanded.

HAYS, C. J., and BLISS, GARFIELD, OLIVER, PETERSON, SMITH, and WENNERSTRUM, JJ., concur.

LARSON, J., dissents from Divisions I and II.