Roger DOUGHERTY, Appellant,

v.

Edward BOYKEN, Administrator of the Estate of Gerhard Bruns, Deceased, Appellee.

No. 52442.

Supreme Court of Iowa.

Jan. 9, 1968.

Hansen, Wheatcraft & McClintock, Des Moines, and Westfall, Laird & Burington, Mason City, for appellant.

Linnan, Lynch & Straub, Algona, and Alan Loth, Fort Dodge, for appellee.

LeGRAND, Justice.

This is the aftermath of an automobile accident which occurred on Highway 18 in Hancock County, near Garner, Iowa, on July 7, 1964. Plaintiff sustained serious personal injuries and instituted this action for damages against Edward Boyken, administrator of the estate of Gerhard Bruns, owner and driver of the other vehicle, who was fatally hurt in the collision. The administrator in turn counterclaimed for the wrongful death of his decedent. For convenience the decedent, Gerhard Bruns, will be referred to herein as defendant.

A jury denied recovery on both claims, finding against plaintiff on his petition and against defendant on the counterclaim. Only plaintiff appeals to us.

The facts upon which this appeal depends may be stated very briefly. Plaintiff and defendant were driving in opposite directions on Highway 18, plaintiff proceeding west and defendant east. As they were about to pass each other, they collided almost headon. Both cars were extensively damaged at the left front and along the left side. The pleadings level several allegations of negligence against each driver, but it is undisputed that the vital question is the charge of failure to yield one-half the traveled way, as required by section 321.298, Code, 1962. Each party accuses the other of having violated this statutory provision.

No one saw the accident, nor were those directly involved of any help in establishing the circumstances immediately preceding it. Defendant made only fragmentary statements before he died. His brother, Henry, who was a passenger in the car, was killed instantly. Plaintiff's recollection was so hazy and undependable that his testimony is of no value.

Both sides necessarily relied heavily on the physical facts, including damage to the vehicles; where they finally came to rest and their relative positions; debris on the highway; gouges and marks on the pavement; and stains from radiator fluids. Each sought to fix the point of impact by the use of expert testimony and to thereby establish responsibility for the accident.

The pivotal issue before us is the propriety of the trial court's rulings on the admission and exclusion of certain opinion evidence as to the course of the vehicles, both before and after their collision, and the point at which, and manner in which, they collided. Except for claimed misconduct on the part of the jury, all of the assignments of error deal with this matter in one way or another.

■ An expert has been defined as one who is qualified by study, training, or experience in a particular subject or field of endeavor which gives him special knowledge and permits him to form a definite opinion of his own on matters persons lacking such knowledge or training cannot correctly decide. 31 Am.Jur.2d, Expert and Opinion Evidence, section 26, page 523; 32 C.J.S. Evidence § 457, page 98.

■ The use of expert testimony is not new, but the conditions under which it may be used are the subject of endless litigation. This whole subject is exhaustively discussed in Grismore v. Consolidated Products Company, 232 Iowa 328, 5 N.W.2d 646. As pointed out there, all expert opinion testimony is admitted as a matter of necessity; it must first appear that a jury needs assistance on issues it is unable to intelli-gently and correctly determine alone. Once this is shown, expert opinions may be admitted to help the jury reach a true determination.

In the present controversy each party (exclusive of medical testimony with which we are not concerned) called one witness upon whom he relied as an expert to sustain his theory of the case. Plaintiff used Sergeant Elmer Angle, a member of the Iowa Highway Patrol for some 14 years; defendant produced Dr. Ronald Nelson, professor in physics and engineering at Augustana College in Sioux Falls, South Dakota.

Since this appeal revolves almost entirely around the testimony of these two men, we outline in detail their background and qualifications before discussing the problem now confronting us.

Sergeant Angle during his 14 years of service had investigated approximately 750 accidents of which three-fourths had involved collisions between two vehicles. He had training in accident investigation at Northwestern University and Cornell Research Institute. He also received training from the Highway Patrol before being assigned to a territory and he had taken refresher courses each year since joining the patrol. These courses included study to determine point of impact in two-vehicle accidents.

Sergeant Angle arrived at the scene of this accident before the cars or victims had been moved. He testified to his observations, including position of the vehicles, debris on the highway, marks on the surface of the road, distances separating the vehicles, damage to the cars, and then stated he had an opinion as to the point of impact. He was not permitted to give that opinion. The question was posed in several ways aimed at disclosing "what side of the center line" the impact occurred and "whether the impact occurred on the north or south side of the highway." Each time the opinion was excluded by rulings sustaining objections thereto.

An offer of proof was made and the officer's answer, if allowed, would have placed the point of impact on the north side of the highway, the side on which plaintiff was traveling as he proceeded west toward defendant's eastbound vehicle.

Defendant's expert, Dr. Ronald Nelson, is head of the Physics Department at Augustana College in Sioux Falls, South Dakota. He is also head of a testing and investigation laboratory at the college. He received his Bachelor of Arts degree from Augustana College and his Master's and Doctor's degrees from the University of Colorado. Subsequently he did further study at the University of Iowa, Princeton University, Massachusetts Institute of Technology, University of Colorado and Michigan College of Engineering. He now works largely in the field of physics and engineering as well as in the investigation of accidents of all types. He also teaches subjects dealing with these matters. Dr. Nelson has had considerable experience in the field of accident reconstruction, which he says is now a generally recognized and accepted area of scientific study and work. After testifying to these qualifications, Dr. Nelson was permitted to express his opinion to various matters which we discuss in detail later.

The exclusion of Sergeant Angle's opinion testimony and the admission of Dr. Nelson's are assigned as error.

■ I. The admission or exclusion of expert opinion testimony rests largely in the judgment of the trial court. Its ruling will be reversed only upon a clear showing of abuse of discretion. McCormick on Evidence, page 23; 31 Am.Jur.2d, Expert and Opinion Evidence, section 3, page 497; 32 C.J.S. Evidence § 449, page 85; Grismore v. Consolidated Products Company, supra; Marean v. Petersen, 259 Iowa 557, 144 N.W.2d 906, 910; Long v. Gilchrist, 251 Iowa 1294, 1297, 105 N.W.2d 82, 84; Brower v. Quick, 249 Iowa 569, 577, 88 N.W.2d 120, 125.

■ However, despite Professor Wigmore's argument that the trial court's ruling should not be subject to review, such discretion is not unlimited. 2 Wigmore, Third Ed., section 561, page 641; Hardwick v. Bublitz, 254 Iowa 1253, 1259, 119 N.W.2d 886, 890; Jacobsen v. Gamber, 249 Iowa 99, 102, 86 N.W.2d 147, 149; Luse v. City of Sioux City, 253 Iowa 350, 112 N.W.2d 314; Jones v. O'Bryon, 254 Iowa 31, 116 N.W.2d 461; Carbone v. Warburton, 11 N.J. 418, 94 A.2d 680.

■ The discretion exercised by the trial court must be a legal one based on sound judicial reasons. "Abuse of discretion" means simply no discretion to do what was done. Jacobsen v. Gamber, supra; State v. Koeppel, 250 Iowa 1052, 1054, 97 N.W.2d 926, 927; Hardwick v. Bublitz, supra; 32 C.J.S. Evidence § 449, pages 85–87; 5 Am.Jur.2d, Appeal and Error, section 774, pages 216–217.

For reasons hereinafter set out we conclude there was an abuse of discretion here in the trial court's ruling, both in rejecting the opinion testimony of Sergeant Angle and in admitting that of Dr. Nelson.

■ II. We discuss first the exclusion of Sergeant Angle's opinion that the impact occurred on plaintiff's side of the road. Defendant objected to this testimony on grounds that there was no proper qualification or foundation shown for the witness to give such opinion; that the matter inquired into was not a proper subject of expert testimony on the record made because the jury was able to pass upon the matter themselves; and that the opinion of the officer "in his official regalia proclaimed as his official opinion, backed by his position with the State, is not sufficiently important to outweigh the likelihood that the jury would exaggerate or blindly follow it" and be misled, rather than led, by it.

■ Defendant's objection was sustained generally. We disagree with this

ruling. Under our holdings, it is indisputable both the qualifications and the foundation were sufficient to permit Sergeant Angle to give his opinion as to the point of impact. Hamdorf v. Corrie, 251 Iowa 896, 903, 101 N.W.2d 836, 840; Nielsen v. Wessels, 247 Iowa 213, 229, 73 N.W.2d 83, 92; Lucas v. Duccini, 258 Iowa 77, 82, 137 N.W.2d 634, 637; Mickelson v. Forney, 259 Iowa 91, 143 N.W.2d 390, 395. In all of these cases the qualifications of the police officer were substantially the same as those of Sergeant Angle, the foundation upon which the opinion was based was not materially different from the foundation in this case, and in each instance we held the opinion of the investigating officer to be admissible. In each of these cases, it is true, we merely affirmed an exercise of discretion by the trial court in admitting expert opinion testimony. We did not decide that its exclusion would have been an abuse of discretion. However, we have consistently held an investigating officer may give his opinion as to the point of impact. 53 Iowa Law Review, page 431. This is true even though the officer's qualifications are slight for, as we said in Marean v. Peterson, supra, qualification goes to the weight of the opinion rather than to its admissibility. We recognize too, of course, that under some circumstances different trial courts may reach different results as to admissibility of evidence based upon questionable foundation or qualifications. Nevertheless where, as here, the circumstances are not fairly debatable and are overwhelmingly in favor of admission, a ruling to the contrary is not a "legal discretion" nor one based on "sound judicial reasons." Jacobsen v. Gamber, 249 Iowa 99, 102, 86 N.W.2d 147, 149 and citations.

■ Defendant also urges Sergeant Angle's opinion testimony was unnecessary because the jury was just as able to draw conclusions from the physical facts as was the officer. Again we disagree. There was no direct testimony concerning the circumstances of this accident. The jury was almost entirely dependent upon the physical facts. Certainly a trained investigator, skilled and experienced in gathering and interpreting data, is better able to draw proper conclusions from such information than is a group of untrained jurors. This is particularly true here because both plaintiff and defendant argued vigorously from the same physical facts to reach directly opposite conclusions.

The case of Een v. Consolidated Freightways, U.S.Dist.Ct., N.Dak., S.E.Div., 120 F.Supp. 289, is particularly in point. There, under facts quite similar to these, the court held the opinion of the investigating officer was admissible, particularly since "counsel are ably urging completely opposite inferences from the same physical facts found to exist immediately following the accident."

In answer to the argument that a jury was well able to conclude the side of the road upon which the impact occurred, the court there said, "It would seem, therefore, that this is not a case where the conclusion as to where the collision occurred is so obvious that any reasonable person, trained or not, could easily draw the inference. Rather, it would seem to be a case where trained experts in the field would be of considerable assistance to the jurors in arriving at their conclusions." This language is equally appropriate here, and it summarizes our own conclusions concerning the necessity for expert testimony in this instance.

■ As his final reason for excluding Sergeant Angle's testimony, defendant urged that any insignificant help the officer could give the jury would be outweighed by the likelihood they would blindly follow his opinion because of the prestige of his office as a representative of the State. Defendant vigorously argues it would have been improper and prejudicial to permit Sergeant Angle, bedecked in his official regalia, to give his opinion based upon an investigation carried on by him as a member of the highway patrol. According to the defendant, the danger that the jury would blindly follow this opinion and accord to it greater veracity than it deserved is

disproportionate to any incidental benefit the jury might gain from such opinion. Defendant supports this argument by citing cases from a number of other jurisdictions. Wade v. Wolf, Okl., 312 P.2d 493, 495; Beckman v. Schroeder, 224 Minn. 370, 28 N.W.2d 629; Jackson v. Brown, Okl., 361 P.2d 270, 272; Chester v. Shockley, Mo., 304 S.W.2d 831; Bogard G.M.C. Company v. Henley, 92 Ariz. 107, 374 P.2d 660; Maben v. Lee, Okl., 260 P.2d 1064.

All of these cases, however, deal only with the question of prejudice resulting from the improper admission of opinions by police officers. They do not hold, as defendant claims, the opinion should be excluded because the witness holds an official police position. They hold simply that such an opinion, when improperly admitted on other grounds, resulted in prejudice because of the danger the jury was unduly impressed by the official who gave it. In each of those cases the court held the evidence was erroneously admitted on other grounds, either because the witness was permitted to determine directly the question of liability; or the foundation upon which his opinion was based was insufficient; or the matter testified to was not a proper subject for expert testimony. The "official regalia" argument was used only in deciding if prejudice resulted from such error. Since we hold the opinion was admissible, we need not consider the soundness of this theory now.

We have reviewed the record carefully and can find no ground upon which the trial court could have properly excluded the opinion testimony of Sergeant Angle. For the reasons above set out we hold that such exclusion was an abuse of discretion.

■ III. We now consider plaintiff's assignments of error dealing with Dr. Nelson's opinion testimony and the admission of Exhibit AB, a chart prepared by him. We have already indicated we feel Dr. Nelson was well qualified to testify as an expert, but we must hold the foundation for his opinions was inadequate and was founded partially on hearsay. Dr. Nelson's educational background and experience easily qualify him as an expert within our definition of the term. He represents that relatively new type of witness rapidly becoming important in the trial of accident cases. They have been variously described as "super-experts," "scientific experts," and, somewhat disdainfully, "accidentologists." We have never had occasion to pass upon the use of such an expert. Other jurisdictions are by no means unanimous in approving them. Some have frowned upon such testimony; others have accepted it reluctantly. See Carmody v. Aho, 251 Minn. 19, 86 N.W.2d 692; Hagan Storm Fence Company of Mississippi v. Edwards, 245 Miss. 487, 148 So.2d 693; Kleinsasser v. Gross, 80 S.D. 631, 129 N.W.2d 717. In still other cases such witnesses have been readily accepted. Rhynard v. Filori, 8 Cir., 315 F.2d 176; City of Phoenix v. Schroeder, 1 Ariz.App. 510, 405 P.2d 301; Caves v. Barnes, 178 Neb. 103, 132 N.W.2d 310. For a discussion of this subject see 47 Marquette Law Review 491; 10 S.Dak. Law Review 161 and 48 Iowa Law Review 1055.

We see no reason why such a person, eminently qualified by study, education and experience, should not be added to the galaxy of those who, along with mechanics, garagemen, engineers, insurance adjusters, and law enforcement officers, may express opinions in matters of this kind.

Nevertheless we find it was error to admit Dr. Nelson's opinion evidence under the circumstances existing here.

Dr. Nelson's first contact with this matter was 11 months after it had occurred. His preparatory work consisted of visiting the scene of the accident on June 17, 1965; taking one picture of an intersection located some distance from the site of the accident; examining various photographs taken by others showing the location of the cars, the damage to them, and certain marks on the highway; preparing certain diagrams of his own from this information; and conferring with Sergeant Angle con-

cerning his investigation of the accident. This was his total investigatory effort prior to testifying.

Based on this sketchy factual information, he was permitted to express his opinion as to the courses of the two vehicles immediately before impact; the identity of tracks and marks on the pavement; the angle at which the cars collided; their line of travel after impact; the manner of their travel; and how certain debris on plaintiff's side of the road got there.

Several times during his testimony, Dr. Nelson stated he was basing his opinion partially on a conversation he had with Sergeant Angle on June 17, 1965. He stated the officer furnished him with measurements he had made at the scene of the accident and "told me what the results of his investigation were." In connection with the introduction of Exhibit AB, he again stated he relied on measurements from Sergeant Angle, which he said were the same as the officer had testified to. Dr. Nelson was not present when the patrolman testified, although he says the testimony was made available to him.

To illustrate that this foundation for Dr. Nelson's opinions was unreliable and inadequate, we call attention to Sergeant Angle's testimony regarding the location of the vehicles after they came to rest. In attempting to relate the patrolman's testimony, Dr. Nelson actually reversed the distances at which the officer had put them from the debris. Yet this is the testimony upon which Dr. Nelson says he relied in forming his opinion and in preparing Exhibit AB.

We quote from Sergeant Angle's testimony:

"It was 30 feet from the area of the debris on the north half of the pavement to the Dougherty car. (Chevrolet) From the area of this debris to the Bruns vehicle (Ford) the distance was 39 feet and 4 inches."

Later Dr. Nelson testified as follows:

"Q. Doctor, Patrolman Angle testified that the Chevrolet car was located five and one-half feet north of the south edge of the pavement. Is that where it is shown on your diagram "AB"? A. That is correct.

"Q. He also testified that the Ford car was located right at the edge of the pavement. Have you so shown it on your diagram? A. That is correct.

"Q. Patrolman Angle also testified that the Chevrolet car was thirty-nine feet four inches from the point which he calls debris. Is that where you have shown it? A. There is debris at a point thirty-nine feet from the Chevrolet.

"Q. You have shown that on it? A. I have.

"Q. The Ford is thirty feet from that point. Is that the way you have shown it? A. That is correct. Which makes the two cars sixty-nine feet apart, which is the way my diagram shows it."

We concede this matter may be of no consequence. But it nevertheless allows an opinion relating to a vital matter to be based on a completely erroneous premise. Furthermore, we should not speculate on the importance of these measurements, particularly in view of Dr. Nelson's avowed ability to draw precise conclusions from seemingly insignificant details.

█ We also find that Dr. Nelson's opinions were based partially on hearsay information obtained from Sergeant Angle. It is error to allow such testimony. Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 108 A.2d 616, 621, 45 A.L.R.2d 1106; Xenakis v. Garrett Freight Lines, 1 Utah 2d 299, 265 P.2d 1007, 1010; Day v. Lorenzo Smith & Son, Inc., 17 Utah 2d 221, 408 P.2d 186, 189; Brooks v. Gilbert, 250 Iowa 1164, 1169, 98 N.W. 2d 309, 312; Switzer v. Baker, 178 Iowa 1063, 1078, 160 N.W. 372, 376; 31 Am.Jur. 2d, Expert Opinion and Evidence, section 42, page 546.

Appellee argues vigorously Sergeant Angle told Dr. Nelson nothing more than the measurements taken at the scene. These, he says, were not in dispute and therefore Dr. Nelson was entitled to use them. We have no way of knowing this is what Dr. Nelson meant when he said Sergeant Angle told him "the results of his investigation." We consider it unlikely that these two men, both professionally interested in accident investigation, limited their discussion to distances and measurements. It is much more probable that each had a theory about the accident and an opinion as to its cause, and that these matters, too, were included in their discussion. Perhaps defendant is correct in his version of this conference, but we should not be required to resort to surmise as to what information was given and relied on; nor, more importantly, should the jury. 31 Am.Jur.2d, Expert and Opinion Evidence, section 37, page 540; section 39, page 543; section 42, page 546.

Before it can evaluate an expert's opinion, the jury must know what it is founded on. This may be done by having the witness state what facts he relies on and their source or by having facts assumed to be true by way of hypothetical question. Neither was done here. Rather the witness stated he had obtained from Sergeant Angle in an out-of-court discussion the results of an investigation carried on by the officer. He did not say what those results were. Under such circumstances Dr. Nelson's opinions were no more than conjecture, speculation and surmise. Under somewhat similar circumstances involving a police officer's testimony as to the point of impact, which was based upon hearsay information, we said in Brooks v. Gilbert, 250 Iowa 1164, 1165, 1169, 98 N.W.2d 309, 312, "This fundamental fact should not be permitted to rest on opinions, conclusions and hearsay evidence." Here, too, we are unwilling to let such vital testimony rest upon such tenuous foundation.

This situation is not at all similar to Kastner v. Los Angeles Metropolitan Transit Authority, 63 Cal.2d 52, 45 Cal.Rptr. 129, 403 P.2d 385, where an expert was permitted to base his opinion on a hearsay conversation with a witness because that witness had testified to those identical facts during the trial. The foundation for the opinion therefore was not the hearsay but the evidentiary statements. Our difficulty here is we have no way of determining what Sergeant Angle told Dr. Nelson. Dr. Nelson's statement that the officer gave him the results of his investigation without detailing what those results were falls far short of establishing that Sergeant Angle's disclosures and his testimony were the same.

We hold the foundation evidence, both for Dr. Nelson's opinions and for the admission of Exhibit AB, was fatally defective as a matter of law. It failed to set forth sufficiently the facts upon which it was based so that the jury could properly evaluate it. It was based partially on information obtained from Sergeant Angle, which was clearly hearsay. The admission of this evidence was error.

IV. We must now consider whether the error discussed in Divisions II and III was so prejudicial as to require a new trial. We find it was. Dr. Nelson's testimony was vital to defendant. Its importance was emphasized by the exclusion of Sergeant Angle's opinion as to the point of impact, which was equally important to plaintiff's case. We do not say, of course, if the opinion evidence of one expert is received, that of his counterpart must also be admitted. The admissibility of evidence must be decided independently as to each witness. However we are now considering only the question of prejudice, not admissibility.

A reading of the record leads inevitably to the conclusion that Dr. Nelson's testimony could well have been decisive with the jury. Without Sergeant Angle's conflicting opinion, it stood virtually unchallenged. Under such circumstances the erroneous rulings with respect to these two

witnesses were highly prejudicial to plaintiff.

We reverse and remand for a new trial. Under the circumstances here we direct that such new trial be of all issues, including defendant's counterclaim. We, therefore, find it unnecessary to review plaintiff's remaining two assignments of error relating to the trial court's instruction on expert witnesses and claiming misconduct on the part of the jury.

Reversed and remanded.

All Justices concur except RAWLINGS, J., who concurs in the result.