**Richard KARR, By Lloyd Karr, His Father and Next Friend, Appellant,**

v.

**SAMUELSON, INC., Norman Richardson, and Betty Richardson, Appellees.**

**Lloyd KARR, Appellant,**

v.

**SAMUELSON, INC., Norman Richardson, and Betty Richardson, Appellees.**

**No. 53809.**

Supreme Court of Iowa.

April 7, 1970.

———◆———

Lundy, Butler, Wilson & Hall, Eldora, for appellants.

Lund & Lund, Webster City, for appellee Samuelson, Inc.

Carroll Wood, Webster City, for appellees Norman Richardson and Betty Richardson.

BECKER, Justice.

This case combines actions for personal injuries by the injured minor and his father seeking general damages and damages for medical expenses. The cases are treated in solido. Defendant Samuelson, Inc. is sued as owner of the other vehicle claimed to be involved in the automobile mishap. The Richardsons are both sued as persons having the exclusive management and control of the other car. The case was submitted to the jury on interrogatories. The answers to interrogatories dictated a finding for defendants. After overruling a motion for new trial, the court entered judgment as indicated. Plaintiffs appeal. We remand.

The case has many unusual aspects, most of them confusing. It is therefore essential to set forth the contentions of the contend-ing parties in oversimplified form, without regard to order or manner of proof, in order to follow the evidence and arguments.

Plaintiff, Richard Karr, then age 16, claims he was driving north on a 22 foot concrete country highway known as White Fox Road at about 7:00 p. m., July 25, 1964; he was traveling about 50 miles per hour on a straight level stretch when defendants' 1958 blue Buick automobile came out of a field entrance on the side of the highway and turned in front of him, he drove to the right, the left side of plaintiffs' vehicle struck the right side of defendants' car, went out of control, crossed the highway, went into the ditch on the left side of the highway, rolled over, threw plaintiff and his passengers clear of the car and severely injured plaintiff.

Defendants contend Mrs. Richardson was driving north on the same highway at the same time and place, she was not driving a 1958 blue Buick but a 1955 green Buick, she did not turn onto the highway but had been there all along. She came from her home in Webster City and was going to her brother-in-law's house a short distance down the road. As she prepared to turn right into the drive she glanced in the rear vision mirror and saw plaintiffs' auto rolling over and over down the highway behind her. Her scream caused her husband to look back to see the same scene. Plaintiffs' auto never touched the Richardsons' car, the Richardsons were not involved in the accident in any way except they were in the vicinity preparing to turn into the driveway of their destination.

The dispute is therefore somewhat unusual in the divergence of claims not only of how the accident happened but what car or cars were involved and who was driving defendants' car. The specifications of negligence submitted were that defendants suddenly and without warning caused the car occupied by Richardsons to be placed in the path of plaintiffs' car, defendants drove at too slow a speed and failed to keep a proper lookout. Defendants contend there should

have been a directed verdict on those issues and on proximate cause. Under this record if defendants are correct as to their right to a directed verdict there is merit in their position that the errors claimed by plaintiff are harmless. Thus, we first consider whether plaintiffs generated a case for the jury.

I. In considering the propriety of a ruling on motion for directed verdict we consider the evidence in the light most favorable to the party against whom the motion was made. Rule 344(f) (2), Rules of Civil Procedure. The rule is of particular importance here because there is a wealth of conflicting testimony as to every facet of the case, coming from both sides. If plaintiff generated a jury case, these conflicts are for the trier of the fact, otherwise not.

## PLAINTIFFS' CASE

II. Plaintiffs' case consists of both direct and circumstantial evidence. Richard Karr and his two youthful passengers testified they left Webster City about 7:00 p. m., destined for the stock car races. As they proceeded north on White Fox Road there was nothing ahead of them traveling in their direction but another car was approaching from the opposite direction. They were traveling about 50 miles per hour. Suddenly a car loomed in front of them. Plaintiff hit the brakes but remembers nothing thereafter until he fully regained consciousness in the hospital about a week later.

Richard Norman, plaintiffs' front seat passenger, told essentially the same story with the same subsequent loss of memory. The other passenger, Dan Morton, remembers nothing of the events immediately preceding or during the accident, back until his recollection of being at a Drive-In before starting the trip.

Phyllis Hilpipre was approaching the scene from the north. She saw the Karr vehicle south of her, approaching at about 50 miles per hour. There were no other vehicles between them. There was a dip between her location and the scene of the accident. She entered the dip and when she came out of it there was a blue car, which she later identified as the Richardson car, approaching from the south: " * * * The Karr automobile was on the right side of the road on the east side. It was traveling north. I was going about 30. He might have been going about 50. I don't know. I believe it was traveling faster than the Richardson vehicle. When I first saw it it was directly behind of the Richardson car. I saw the left fender and headlights. Then it disappeared. I couldn't see the Karr automobile at all. Then it shot across the road and hit the ditch and then whirled in the air and came down. When I saw the left fender and headlight of the Karr automobile, it was about directly behind Richardsons' car. I do not remember that I made any observation that it was starting out to the left from behind the Richardson vehicle. It disappeared behind the Richardson car. I couldn't tell at that time how far the Richardson car and the Karr vehicle were apart because I couldn't see the Karr vehicle. I suppose at the time that the Karr automobile started to disappear it was a foot or two feet maybe something like that back of the Richardson car." Mrs. Hilpipre did not see the two cars come in contact at any time.

Mrs. Hilpipre subsequently examined both the blue Buick claimed by plaintiffs to have been in the accident and the green Buick claimed by defendants to be the car Mrs. Richardson was driving at the scene. Mrs. Hilpipre stated positively the Richardsons were not driving the green Buick as claimed. She is less positive of her identification of the blue Buick but stated the blue Buick shown to her at the home of plaintiff Lloyd Karr was the blue Buick driven by the Richardsons the night of the accident.

Mrs. Hilpipre stopped in the near vicinity of the accident, talked to Mr. Richardson who got out of his car from the right side and looked after the boys who were all lying in the ditch unconscious. Richardson

said he would go call for help, got in behind the wheel of his automobile and left. Richardson later returned to the scene. He says he returned with his brother, in his brother's car. Plaintiffs claim Richardsons' black Chevrolet was at the scene immediately after he returned. The Richardson Buick was not returned to the scene.[1]

Three highway patrolmen arrived at the scene. Officer Hogan testified he found a windshield practically intact in the east ditch. He placed it in the rear of the wrecked Karr Chevrolet. The operator of the wrecker said he looked into the back of the Karr automobile when he got it back to the salvage yard and saw a piece of glass in the back which was about the size of a windshield. A Mr. Miller, who was at the scene, also testified he saw the windshield in the east ditch.

The jury could find from the evidence that plaintiffs' car laid down skid marks starting just south of a field entrance; these skid marks started 38 feet south of a field entrance to the highway, were all on the east side of the highway, angled further east to within one foot of the edge and ended with three jump spaces where there were no markings for eight feet and then 14 inch markings. Lighter tire marks then angled west across the highway into the ditch where substantial gouging marks were noted; the Chevrolet then went along the ditch and back out to where the car came to rest. At the field entry Mr. Karr noticed two fresh-appearing tire marks, about 18 inches or two feet long, coming out of the entrance.

After Mr. Karr was told about the windshield found in the ditch he commenced a search for the car from which it had come. Much of the record is taken up with the circumstances of this search. The jury could find the windshield came from a blue 1958 Buick formerly owned by Samuelson's, Inc. Mr. Samuelson, sole owner of Samuel-

son's, Inc., is Betty Richardson's father. She had driven the 1958 blue Buick from time to time but denied driving it that night. The car was sold to a car dealer in Minnesota after the accident and later purchased by Mr. Karr through a friend. There is also substantial evidence in the record to support a finding this car had been in a wreck, had paint on the right side which was identical to the paint on the Karr automobile and had been repaired.

Dr. Weiland, an expert on accident reconstruction testified at length. He had examined the scene of the accident, parts of the Chevrolet, the blue Buick and the pictures taken at the scene. He concluded the Chevrolet made contact with another object near the north end of its 100 foot skid mark and just before the "jump marks" occurred. This contact caused the jump marks. The two vehicles disengaged and the Chevrolet went west across the highway into the ditch.

Rule 344(f) (16), R.C.P. provides: "An issue may be proven by circumstantial evidence; but this evidence must be such as to make the theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. Generally, however, it will be for the jury or other trier of the facts to say whether circumstantial evidence meets this test."

We shall not further pursue the long, detailed evidence used to support plaintiffs' case. They claim their three eyewitnesses' testimony that there was no car in front of them, the sudden appearance of the car, the physical fact there was only one entry onto the highway in the vicinity, fresh-appearing tire marks coming from the entry, placement and nature of the skid marks, testimony of their expert interpreting the skid marks and all of the evidence favorable to them generates a jury case based on direct and circumstantial evidence on the

1. Various witnesses testified Mr. Richardson was identified to the patrolmen as the driver of the Richardson car but the point is not important to this appeal. The case was submitted as against both Mr. and Mrs. Richardson.

theory the Richardson car came out of the field drive without yielding the right of way, turned directly in front of the oncoming plaintiffs' vehicle, caused an emergency which in turn caused the accident and resultant damages. This line of reasoning depends upon a jury finding the Richardsons were operating a blue 1958 Buick. We hold the evidence generated a jury case.

We emphasize again the presence of substantial evidence contrary to all of the above points. The trial court properly found conflicts generated by the bitterly opposite testimony were for the jury, not for the court. Questions of whether error occurred in the course of trial or in the manner of submissions are separate and must be considered infra.

## OPINION EVIDENCE

III. Plaintiffs' first assignment of error embraces the difficult field of opinion evidence. They challenge the qualifications of defendants' witness Dr. Hinckley to express an expert opinion as to the speed of plaintiffs' automobile immediately prior to accident, the foundation for the hypothetical question and its form. In answer to the hypothetical question, an opinion was expressed that plaintiffs' car was traveling at the rate of 102 miles per hour immediately prior to the impact. If error occurred in any of the particulars charged it seems clear the error was prejudicial.

■ As stated in Robeson v. Dilts (Iowa) 170 N.W.2d 408, 413: "We are committed to a liberal rule on the admission of opinion evidence. The matter rests largely within the discretion of the court." The liberal rule does not mean expert opinion evidence is admissible over proper objection where there has been no proper foundation as to the qualification of the expert or the form and content of the questions asked.

Dougherty v. Boyken, Iowa, 155 N.W.2d 488 and Hedges v. Conder (Iowa) 166 N.W.

2d 844, have examined the problems occasioned by proffers of testimony by accident reconstruction experts. In both cases we adhered to our definition of an expert: " * * * as one who is qualified by study, training, or experience in a particular subject or field of endeavor which gives him special knowledge and permits him to form a definite opinion of his own on matters persons lacking such knowledge or training cannot correctly decide." (loc. cit. 155 N.W.2d at p. 490, 166 N.W.2d at p. 856).

In Dougherty v. Boyken, supra, we approved the use of "scientific experts" who, by reason of their backgrounds and study in physics, engineering and related scientific fields, are qualified to express opinions as to such matters as speed of vehicles at and immediately prior to the happening of the accident, conclusions to be drawn from detailed examination of the wrecked vehicles and the like. However, we were primarily concerned with the form and content of the questions and answers used to elicit the evidence. We said: "Before it can evaluate an expert's opinion, the jury must know what it is founded on. This may be done by having the witness state what facts he relies on and their source or by having facts assumed to be true by way of hypothetical question. Neither was done here. * * *." (loc. cit. 155 N.W.2d at p. 495).

■ We find it unnecessary to pass on Dr. Hinckley's qualification as an expert. We have grave doubts as to the sufficiency of the showing as to the witness' expertise on the subject but are equally doubtful of the sufficiency of plaintiffs' objections on this score. In Hedges v. Conder, supra, we disallowed the expertise of the witness with the statement: "There is no showing Brown knew the data necessary to determine the minimum original speed of a vehicle that came to stop by skidding, whether he knew the formula used in computing speed or the variables involved in this calculation. Perhaps Brown knew these factors, if so, it doesn't appear from the record before us." (loc. cit. 166 N.W.2d, p. 857).

The record here is equally devoid of any showing. Mr. Butler's objection and motion to strike, footnote 2, infra, raise the question of the witness' qualification to answer the specific question put to him. Hedges v. Conder and Dougherty v. Boyken, supra, both recognize the necessity to qualify the witness not only in the general matter of scientific background but also in the specific area of testimony.

II Wigmore on Evidence, Third Ed., §§ 555–562 discuss the various qualifications for expert testimony. At section 555, page 634, the author states: "The capacity (to testify as an expert) *is in every case a relative one, i. e.* relative *to the topic about which the person is asked to make his statement.* The object is to be sure that the question to the witness will be answered by a person who is fitted to answer it. His fitness, then, is a fitness to answer on that point. He may be fitted to answer about countless other matters, but that does not justify accepting his views in the matter in hand. Conversely, if he is skilled enough to acquire knowledge on the matters in hand, it is immaterial that he is not skilled upon any or every other matter."

We deem it necessary to mention the question of the witness' qualification because the case is being remanded for a new trial. However, this case must be reversed because plaintiffs' objections to the foundation and the form and content of the hypothetical question were good and the case must be remanded for retrial for that reason. The necessary material, being quite long is footnoted.[2]

2. "MR. LUND: Dr. Hinckley, assuming a 1961 Chevrolet automobile traveling north on White Fox Road in the area of the farm drive represented by J–1, having brakes in good order and the car in good condition, and approaching the vicinity of the farm drive,—field drive shown on Exhibit J–1, and taking into account the marks upon the paving commencing in the area of the field drive, traveling generally slightly northeast to the east edge of the paving and then crossing the paving and following a path as shown by Exhibit G, and traveling on further, crossing the paved portion of White Fox Road and continuing in a northwest direction into the west ditch and following for a distance of an additional 66 feet in the west ditch, and then in a northeasterly direction a distance of approximately 12 feet to the shoulder of the west side of White Fox Road, and then traveling across the paving in the area and coming to rest 16.8 feet northeasterly from a mark represented and shown in Exhibit 17, and also indicated on Exhibit 33, the same mark as represented by Exhibit 17, and coming to rest in a position on White Fox Road as shown and located by Exhibit 33 and as represented and shown by Exhibit B; and taking further into account the photographs Exhibits 3 and 4 taken at the scene, and taking this evidence into account as I have described, would you, with a degree of scientific certainty, be able to ascertain approximately the speed of the white Chevrolet as it approached the field drive and commenced the marks as shown by the Exhibits and as shown on J–1. THE WITNESS: Yes. Q. Would you give us that opinion, please?

"MR. BUTLER: All right, we object to this for the reason that no proper foundation has been laid for this interrogatory. The question is a hypothetical question which fails to properly set forth the facts of the record. It refers to certain marks in the pavement as shown on Exhibit J–1, when the marks as shown on Exhibit J–1 were identified as merely being the path of a vehicle and not marks at all. Furthermore, the defendant in his hypothetical question has never identified the marks referred to in his facts. Furthermore, the question assumes that the vehicle went across the paving at the last instant. Also, the request of the defendants for the witness to take into account Exhibits 3 and 4 is indefinite and speculative. It calls for a conclusion. The question is further defective in that the—it assumes certain marks upon the pavement which are not identified as any particular type of marks or representing any action or any particular action of the motor vehicle. In addition thereto, the witness has not been qualified to give his opinion. It affirmatively appears that he does not belong to any engineering societies, and it affirmatively appears that he has a background in chemistry. This witness is not an engineer. He has not shown to have used any scientific calculations for a basis for the answer to this question.

"THE COURT: Well, overruled. You may answer."

Our discussion of factors to be considered in expressing a reconstructed opinion as to speed is particularly relevant here. See *Hedges v. Conder, supra,* and *Hardwick v. Bublitz,* 254 Iowa 1253, 1257–1258, 119 N.W. 2d 886, 888–889, where we examined such authorities as Baker, Judge and Prosecutor in Traffic Court and Lacy, Automobile Cases, Scientific Reconstruction. From these authorities it is clear the length and nature of *skid marks,* as distinguished from tire tracks or marks, is of vital importance. The hypothetical question under attack here asks the doctor to consider, among other things, the *marks* on the pavement "shown on exhibit 17, and also indicated on exhibit 33". Examination of exhibit 17 (the patrol officer's field notes) indicates *skid* marks traveling northwesterly across the highway into the ditch. Total skid marks including this area, the area in the ditch and the original skid marks, are placed at 294 feet. On exhibit 33 (a scale drawn plat) a large part of the same marks are designated as "tire marks to west side". Yet both exhibits are utilized without explanation. There was some previous testimony these northwesterly marks were skid marks and some prior testimony they were tire marks with no sign of skidding. Whether the witness was told to assume the marks were skid marks or tire marks is entirely unclear from the question. The objection adequately points this out in its reference to unidentified marks. Plaintiffs also object to reference to exhibits 13 and 14 (pictures showing the scene, including but not limited to the first 100 feet of skid marks) without reference to the portions of the exhibits to be considered or the significance of the reference.

Nothing in the prior or subsequent questioning clarified the matter. Other objections to the question need not be considered.

The hypothetical question was inadequate to allow the jury to assess the validity of the opinion in answer thereto. The objection was sufficient to alert opposing counsel and the court to at least some of the vital inadequacies which were not corrected. The effect was prejudicial.

## REBUTTAL EVIDENCE

■ IV. Plaintiffs also assign error because of exclusion of certain testimony offered in rebuttal. As noted, Officer Hogan told of finding the Buick windshield at the scene and was corroborated by Mr. Miller. Defendants offered the testimony of Officer Schmelling, Hogan's superior, who said he had searched the same area, found no windshield, didn't believe any windshield had been found at the scene and he doubted the word of his fellow officer. Plaintiffs produced Mrs. Ewing, wife of the driver of the tow truck, and offered to prove she went to the scene with her husband the night of the accident; she saw Hogan, with the help of her husband, pick up the windshield and put it in the back of plaintiffs' automobile. The evidence was excluded as improper rebuttal testimony. Proper offer of proof was made in the absence of the jury.

Trial court has considerable discretion in determining what is proper rebuttal evidence, *Robson v. Barnett,* 241 Iowa 1066, 1071, 44 N.W.2d 382. While we would be slow to reverse this case on this assignment of error alone we think it proper to state,

---

"* * * A. It is based on these photographs in part that I have seen. In my opinion the Chevrolet was going at a speed of 102 miles an hour at the time it started to skid. * * *.

"MR. BUTLER: * * * we move to strike the answer * * *, for the following reasons:

"1st. The witness now affirmatively appears to be unqualified to make such a determination.

"2nd. It affirmatively appears that this witness has no special training, either by formal education or by experience, whereby he might answer such a hypothetical case.

"3rd. It further appears that the answer is speculative, not based upon any mathematical calculation, not based upon any reasonable scientific foundadation."

in light of remand, that the evidence should have been admitted. On plaintiffs' case in chief, Mrs. Ewing's testimony would have been merely cumulative. Doubt had not been cast on Hogan's credibility until defendants' responsive evidence was introduced. Plaintiffs should have been allowed to produce what cumulative evidence they had to meet defendants' testimony. The mere fact the evidence would have been admissible on the main case does not, of itself, bar admission on rebuttal. Robson v. Barnett, supra, Donaldson v. Mississippi and Missouri Railroad Co., 18 Iowa 280, 289; 88 C.J.S. Trial § 101, page 212.

■ A similar complaint is made in relation to the proffered rebuttal testimony in relation to the tendency of Buick windshields of the type in question to pop out of a car. As to this evidence the court's discretion was not abused.

## WITHDRAWAL OF SPECIFICATION OF NEGLIGENCE

■ V. Plaintiffs' next assignment of error is withdrawal of their specification 4.1: "In negligently emerging from a private driveway and entering a highway without yielding the right of way to the plaintiff." In light of what has been said in Division II this specification should have been submitted. The specification actually used, "a. She suddenly and without warning caused the car occupied by Richardsons to be placed in the path of Richard Karr.", was broad enough to cover plaintiffs' theory. But plaintiffs elected to plead a more specific allegation of negligence. Since we hold there was sufficient evidence to make a jury case on the theory, the specification should have been submitted. In Kuehn v. Jenkins, 251 Iowa 557, 562, 100 N.W.2d 604 we said: "The rule is well established that where there is sufficient evidence to warrant submission of pleaded specifications of negligence, it is error for the court not to do so. (Cases cited)." In Mundy v. Olds, 254 Iowa 1095, 1102, 120 N.W.2d 469, 473, we phrased the rule a

little differently: "A plaintiff is entitled to have submitted to the jury such specifications of negligence as are properly pleaded and supported by the evidence. This is so the plaintiff may have the benefit of consideration by the jury of all the evidence necessary to establish negligence." We should add we do not hold necessary the submission of the same issue in two forms. Actual submission on retrial must await the development of evidence on retrial.

## SUDDEN EMERGENCY

■ VI. Plaintiffs requested and got a sudden emergency instruction but the court applied it specifically to both sides. Defendants did not contend they were confronted by a sudden emergency and did not attribute any of their actions to such a cause. While it is true there are cases where the sudden emergency is properly applied to both sides, Baker v. Wolfe (Iowa) 164 N.W.2d 835, 839 and cases noted, we see no basis for such a holding here.

VII. Plaintiffs' complaint of the court's action in submitting additional instructions to the jury is now moot except that on retrial the damage issue must also be submitted.

## SUPPRESSION OF EVIDENCE AND EXEMPLARY DAMAGES

■ VIII. Plaintiffs' final complaint relates to the court's refusal to allow them to amend their petition to allege (1) willful suppression and destruction of evidence, and (2) exemplary damages therefor. Although this claim may well be subject to joinder under rules 22 and 28, R.C.P., the court was not compelled to allow amendment at the late date of request. In Mundy v. Olds, supra, we cited Ver Steegh v. Flaugh, 251 Iowa 1011, 103 N.W.2d 718, 724: " 'The trial court has a broad discretion in the matter of allowing amendments to pleadings, especially those to conform to the proof. We have frequently said

that to allow such an amendment is the rule, to deny it is the exception.'" Here the exception was wisely made. The jury had plenty of hotly contested issues without this addition. The claim was not so interwoven with plaintiffs' main case as to require joinder. If plaintiffs have a cause of action on this theory, a point we do not decide, they can seek remedy by independent action.

Except for the issue considered in Division VIII, the case is remanded for retrial on all issues—Reversed and remanded.

All Justices concur, except UHLEN-HOPP, J., who takes no part.